Robert E. NAGLER, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

Joseph L. JONES, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

Nos. 90–1137, 90–649.

United States Court of Veterans Appeals.

Argued April 15, 1991.

Decided June 6, 1991.

William G. Smith, Los Angeles, Cal., for appellant Robert E. Nagler.

Keith D. Snyder, Washington, D.C., for appellant Joseph L. Jones.

Hugh D. Cox, Greenville, N.C., as amicus curiae.

Jacqueline E. Monroe, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before FARLEY, MANKIN and STEINBERG, Associate Judges.

FARLEY, Associate Judge, filed the opinion of the Court, in which MANKIN, Associate Judge, joined. STEINBERG, Associate Judge, concurring, filed a separate opinion.

FARLEY, Associate Judge:

Invoking the All Writs Act, 28 U.S.C. § 1651(a), and the Declaratory Judgments Act, 28 U.S.C. § 2201, petitioners herein seek the issuance of extraordinary writs or declaratory judgments to (1) prohibit the Board of Veterans' Appeals (Board or BVA) from continuing the allegedly premature review of fee agreements executed between appellants and their attorneys where the only representation being provided is before this Court, and (2) to prohibit the Department of Veterans Affairs (VA)

and the BVA from directly contacting represented clients with respect to fee agreements and providing them with information which is outdated and wrong as a matter of law and which impacts adversely upon the relationship between attorney-petitioners and their clients. We decline the invitation to issue an extraordinary writ with respect to the BVA's review of fee agreements because petitioners herein have an adequate alternative means to obtain the relief they seek. We also decline to issue a writ with respect to the VA's contact with represented clients because (1) we find that such contact is proper when made by the BVA in connection with an authorized review of a fee agreement, and (2) counsel for the Secretary of Veterans Affairs (Secretary) has given assurances that steps have been taken to prevent the repetition of such contact by Regional Offices. Finally, we hold that this Court does not have the authority under the Declaratory Judgments Act, 28 U.S.C. § 2201, to issue declaratory relief.

I.

## FACTUAL AND PROCEDURAL HISTORY

On October 10, 1990, William G. Smith, Esq., filed with this Court a Notice of Appeal (NOA) on behalf of appellant, Robert E. Nagler, along with a copy of the fee agreement executed between them. Previously, on October 5, 1990, Mr. Smith had filed a copy of the fee agreement with the BVA and the Portland, Maine, VA Regional Office (RO) in an attempt to follow regulations proposed by the BVA. *See* 54 Fed. Reg. 34, 334 (1989) (to be codified at 38 C.F.R. § 20.609) (proposed Aug. 18, 1989). The fee agreement provides in part: "Client hires Attorney to provide legal services in connection with appeal to Court of Veterans Appeals & all claims before Department of Veterans Affairs relating to compensation benefits. Attorney shall provide the following services: all services necessary to present claim(s) to Court of Veteran Appeals or Department of Veterans Affairs." Nagler petition, Exhibit "A".

On November 1, 1990, the RO sent a letter addressed to the veteran which, from its language, appears to have been meant for the veteran's representative: "This is to acknowledge receipt of your October 3, 1991 Declaration of Representation of Robert Nagler." Nagler petition, Exhibit "F". The letter goes on to question Mr. Smith's authority to represent the veteran and refers to outdated and incorrect legal authority to the effect that attorney fees are limited to $10. The letter specifically directs the attention of Mr. Smith's client to the federal criminal sanctions contained in 38 U.S.C. § 3405 (1988) for fee violations, including the imposition of fines and imprisonment of representatives.

On November 17, 1990, Mr. Smith wrote to the BVA Chairman demanding "an immediate clarification" regarding the RO's letter "suggesting that my fee agreement was illegal." He asked that the RO be instructed to send a new letter to the veteran explaining the new fee provisions of the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 104(a), 102 Stat. 4105, 4108 (1988) (codified as amended at 38 U.S.C. § 3404(c), (d) (1988)), which did away with the $10 attorney fee limitation. Nagler petition, Exhibit "G". The BVA's November 1, 1990, response to Mr. Smith (which was not sent to his client) stated that "an obsolete form letter was inadvertently sent to [Mr. Smith's] client." Nagler petition, Exhibit "H". On November 29, 1990, the BVA notified Mr. Smith by letter that "based upon a preliminary review of your fee agreement ... the Board intends to review the fees ... on its own motion in accordance with the provisions of 38 U.S.C. § 3404(c)(2), as amended by the Veterans' Judicial Review Act (Pub.L. 100–687)." Nagler petition, Exhibit "H". The letter informed Mr. Smith that "you have a period of 30 days ... within which you may file a response" and "[f]ollowing receipt of your response, or after the time for response has passed, a ruling will be made on this motion. You and your client will be informed of the ruling in writing." *Id.* The letter also contains the sentence: "Please also indicate whether you will or will not represent your client on a *pro bono*

basis in the event that the Board finds that no fees are payable in this case." *Id.* The letter indicates that a copy was sent directly to the client, Mr. Nagler.

Mr. Smith did not respond to the BVA's letter. Instead, on December 18, 1990, Mr. Nagler and Mr. Smith filed in *Nagler v. Derwinski*, U.S.Vet.App. No. 90–1137, a Petition For Extraordinary Relief in the Nature of Injunction or Declaratory Relief addressed to this Court's jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a) (1988). Also filed were a Motion for Sanctions for Government Misconduct, and a Motion for Attorney's Fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1988). On January 11, 1991, the Court entered an order preserving the status quo by enjoining the Secretary (including the BVA and RO) from further contacting any clients of petitioner Smith regarding any fee agreement in connection with his representation before the Court. The Court also enjoined the BVA from ruling on any fee agreement where representation has not yet commenced before the VA or BVA. The two motions were ordered held in abeyance pending further order of the Court and the Secretary was ordered to respond to the Petition. The Secretary's response was filed on February 11, 1991.

On February 15, 1991, Hugh D. Cox, Esq., an attorney who represents claimants before the VA and this Court, filed motions for leave to file a memorandum as amicus curiae and to participate in oral argument in *Nagler*.

On February 25, 1991, appellant, Joseph L. Jones, and his attorney, Keith D. Snyder, Esq., filed a Motion for Leave to Intervene in *Nagler*. They also filed a Petition for Extraordinary Writ in Nature of Mandamus, Prohibition or Certiorari in *Jones v. Derwinski*, U.S.Vet.App. No. 90–649, which had commenced with the filing of an NOA on July 17, 1990. A supplemental Notice of Appeal was filed on October 10, 1990. On December 3, 1990, Mr. Snyder filed with the Court an appearance and a copy of the fee agreement executed between appellant and himself on November 26, 1990.

On December 5, 1990, a copy of the fee agreement was filed with the BVA by Mr. Snyder.

The fee agreement calls for Mr. Snyder to "provide legal services in connection with an appeal to the U.S. Court of Veterans Appeals, any proceedings before the U.S. Department of Veterans Appeals ['] arising out of the appeal to the Court, and on reconsideration to the Board of Veterans ['] Appeals or reopening before a Regional Office of the Department of Veterans Affairs." Jones Petition, Exhibit 2. On February 19, 1991, the BVA sent Mr. Snyder a letter virtually identical to the one sent to Mr. Smith in *Nagler*. The letter notified Mr. Snyder that the BVA intended to review the fee agreement submitted in the *Jones* case. Jones Petition, Exhibit 1. A copy of the letter was sent to the client, Mr. Jones. The letter advised Mr. Snyder that he had 30 days within which to file a response after which the BVA would rule on the fee agreement. Mr. Snyder did not respond to the BVA's letter. Instead, he filed the petition and motion for leave to intervene noted above.

On March 27, 1991, the Court entered three orders. First, the Court ordered that the petitions for extraordinary relief filed in both *Nagler* and *Jones* be consolidated for the limited purpose of oral argument and, if considered appropriate by the Court, for disposition of the petitions. Second, in *Nagler*, the Court vacated the order of January 11, 1991, and entered an order enjoining the Secretary (including the BVA and RO) from (1) further contacting appellant in this case regarding any fee agreement entered into with the attorney-petitioner in connection with representation before the Court, and (2) from contacting or further contacting any client of the petitioner Smith regarding any fee agreement that he has entered into in connection with representation before the Court. The Court also enjoined the BVA from ruling on such a fee agreement (1) in this case, and (2) in any other case as to which a timely NOA has been or is hereafter filed in the Court and as to which petitioner Smith has undertaken representation before the Court but has not yet undertaken any representation before VA or the BVA. The order also provided that the motions for sanctions and for attorney fees would be held in abeyance pending further order of the Court. The motion of Hugh D. Cox for leave to file a memorandum as amicus curiae was granted; his motion to participate in oral argument was denied. The Motion for Leave to Intervene filed by Mr. Jones and Mr. Snyder was denied. Third, in *Jones*, the Court entered an order similar to the one entered in *Nagler* enjoining the Secretary from contacting appellants with respect to their fee agreement and the BVA from ruling on such fee agreements. The Secretary was ordered to respond to the petition; the Secretary's response was filed on April 10, 1991.

Oral argument was heard on April 15, 1991. By order dated April 19, 1991, the parties were ordered to file supplemental memoranda. A joint memorandum was filed by petitioners in both cases on April 30, 1991. The Secretary's supplemental memorandum was filed on May 1, 1991. On May 13, 1991, the Secretary filed a motion seeking an extension of time until May 23, 1991, to file a response to the joint memorandum submitted by petitioners. The Secretary's response was filed on May 23, 1991. On May 30, 1991, the Secretary's motion to extend the time to file a response was granted.

## II.

The VA historically has adjudicated claims and administered benefits in a paternalistic, non-adversarial setting. Indeed, when a claimant submits a well grounded claim, the Secretary is under a statutory duty to "assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 3007(a) (1988). It is the VA's stated policy that:

Every claimant has the right to written notice of the decision made on his or her claim, the right to a hearing, and the right to representation. Proceedings before VA are ex parte in nature, and it is the obligation of VA to assist a claimant in developing the facts pertinent to the claim and to render a decision which

grants every benefit that can be supported in law while protecting the interests of the Government.

38 C.F.R. § 3.103(a) (1990); *see also* 38 C.F.R. § 19.157 (1990).

 A claimant may be represented throughout the claims adjudication process. Such representation often is provided by representatives of the national service organizations, 38 U.S.C. § 3402(a) (1988), who may not charge for their representation. *See* 38 U.S.C. § 3402(b)(1) (1988). Representation may also be provided by an attorney or a claims agent if the veteran desires; a claimant may be charged a fee for such representation but only for services performed after the first final BVA decision. *See* 38 U.S.C. § 3404(c)(1) (1988). A person providing representation before the BVA or the VA after a first final BVA decision must file with the Board a copy of any fee agreement, 38 U.S.C. § 3404(c)(2) (1988), and with this Court if representation is provided before the Court, 38 U.S.C. § 4063(c) (1988). Any representative who charges a fee for representation before the VA or the BVA, or both, on a claim for VA benefits but fails to comply with 38 U.S.C. § 3404 "shall be fined as provided in title 18, or imprisoned not more than one year, or both." 38 U.S.C. § 3405.

 This Court may exercise either original or appellate jurisdiction with respect to the review of fee agreements, depending upon the circumstances and timing of a particular appeal. The Court's appellate jurisdiction arises under 38 U.S.C. § 3404(c)(2), which provides that "[a] finding or order of the Board [in reviewing a fee agreement under subsection (c) ] may be reviewed by [this Court] under [38 U.S.C. § 4063(d) (1988) ]." Section 4063(c) of title 38 United States Code provides this Court with original jurisdiction to review, "on its own motion or the motion of any party," a fee agreement filed with the Court.

In *Erspamer v. Derwinski*, 1 Vet.App. 3 (1990), *appeal dismissed per agreement of the parties*, No. 90–7001 (Fed.Cir. June 28, 1990), we held that this Court has, and, in appropriate instances, can exercise, jurisdiction under the All Writs Act, 28 U.S.C. § 1651. This conclusion was reached based upon Congress having provided that this Court "shall have such assistance in the carrying out of its lawful writ, process, order, rule, decree, or command as is available to a court of the United States[,]" 38 U.S.C. § 4065(b) (1988), a review of the legislative history of the VJRA which created the Court, and a review of the court decisions which confirmed the authority of other Article I courts to exercise jurisdiction under the All Writs Act. *Erspamer*, at 7. The All Writs Act provides that:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a).

 Since petitioners seek extraordinary writs alleged to be "necessary or appropriate in aid of" our original and appellate jurisdiction to review fee agreements, we have jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), to consider their petitions.

### III.

The petitioners charge that the BVA initiated review of fee agreements without legal authority and that the BVA and the RO in *Nagler* (and in another of Mr. Snyder's cases pending before the Court) engaged in unauthorized communication with their represented clients. This allegedly improper contact was compounded by the fact that the communications contained outdated and erroneous statements of law which damaged the attorney-client relationships.

 As we noted in *Erspamer*, Judge, now Justice, Kennedy has counseled that

> [u]se of the All Writs Act in connection with agency matters has been even more rare and the scope of relief granted in these cases has been narrow. The circumstances that will justify our interference with non-final agency action must

be truly extraordinary for this Court's supervisory province as to agencies is not as direct as our supervisory authority over the trial courts.

*Erspamer,* at 7 (quoting *Public Util. Comm'r of Oregon v. Bonneville Power Admin.,* 767 F.2d 622, 630 (9th Cir.1985) (citations omitted)). In recognition of this high threshold for the issuance of extraordinary relief, the test which a petitioner must meet in order to secure an extraordinary writ is a difficult one indeed. Such a petitioner must show both (1) that he or she is clearly entitled to the writ, and (2) that there is available no adequate alternative means of obtaining the relief sought. *Erspamer,* at 9. It now remains for the Court to determine whether petitioners herein have met this two-pronged test with respect to the issues presented in their petitions.

Petitioners' challenge goes directly to the authority of the BVA to review fee agreements under the circumstances presented by these particular cases. In his brief, and at oral argument, the Secretary argued that the BVA's authority to initiate a review of the subject fee agreements is found in the second sentence of 38 U.S.C. § 3404(c)(2) which provides:

The Board, under its own motion or at the request of either party, may review such a fee agreement and may order a reduction in the fee called for in the agreement if the Board finds that the fee is excessive or unreasonable.

However, that sentence cannot be isolated; it must be viewed within the context of the entire section, particularly the preceding sentence which provides in pertinent part:

A person who ... represents a person before the [Department of Veterans Affairs] or the Board of Veterans' Appeals *after* the Board first makes a final decision in the case shall file a copy of any fee agreement between them with the Board at such time as may be specified by the Board.

38 U.S.C. § 3404(c)(2) (emphasis added). When read together, these two sentences of section 3404(c)(2) create a sequence which, in our view, determines what fee agreements the BVA is authorized to review and when the BVA may review them.

■ The BVA is authorized to review a fee agreement only when there is representation before the VA or the Board *after* a first final BVA decision. It is not disputed that there is at present no substantive claim pending before the BVA and no representation under the fee agreements presently being provided before either the BVA or the VA. The only action which has taken place after the first final BVA decisions, other than in connection with appeals to this Court, is the ministerial filing of fee agreements with the BVA and, in *Nagler,* with the RO. Therefore, the BVA lacked the authority to review the fee agreements on its own motion or at the request of either party because, at the time the reviews were initiated, there was no representation being provided before the VA or the BVA after the first final BVA decision.

■ The Secretary also argued that the fee agreements themselves authorized the Board to initiate reviews on its own motion. When pressed at oral argument, counsel for the Secretary could not provide any authority for this proposition, and our research has failed to uncover any. Simply stated, an agreement which provides for a fee to be paid for future representation which might be provided cannot, in our view, itself provide authority independent of the statute for a review of that agreement before such representation has actually commenced.

■ Since the petitioners have the better of the legal argument, they satisfy the first part of the All Writs Act test for extraordinary relief. However, petitioners cannot meet the second part of the test because they have an adequate alternative means to obtain the relief sought. *See Mallard v. United States District Court,* 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989) (citing *Kerr v. United States Dist. Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976)) ("To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek....").

The review of fee agreements initiated by the BVA on its own motion with respect to the cases which prompted these petitions will in due course result in final BVA decisions. Such fee-agreement decisions, if adverse to the petitioners, may be appealed pursuant to 38 U.S.C. § 3404(c)(2) and reviewed by this Court pursuant to 38 U.S.C. § 4063(c). If petitioners choose to appeal, they would, of course, be free to challenge not only the merits of the decisions but the very authority of the BVA to review fee agreements under the circumstances of their respective cases. "[M]indful that '[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations,'" *Erspamer*, 1 Vet.App. at 9 (quoting *Kerr*, 426 U.S. at 402, 96 S.Ct. at 2123), we decline to issue an extraordinary writ directing the BVA to refrain from reviewing fee agreements unless or until there is representation "before the [VA] or the Board of Veterans' Appeals after the Board first makes a final decision in the case." 38 U.S.C. § 3404(c)(2).

## IV.

We turn now to the propriety of direct contact by the BVA, and, as in *Nagler*, by the RO, with represented clients in connection with a statutorily authorized review of fee agreements by the BVA. (Of course, where there is no authority to initiate and conduct a fee agreement review, this issue should not arise.)

## A.

■ In a very real sense, the parties to a review of a fee agreement are the claimant on the one hand and the attorney on the other. Rather than performing as an advocate, the BVA serves in a quasi-judicial role. Under these circumstances, when review of a fee agreement is statutorily authorized, we think it appropriate, indeed necessary, that the BVA provide notice to the claimant as well as to the claimant's attorney of its intention to review a fee agreement and of its ultimate decision. (Of course, 38 U.S.C. § 4004(e) (1988) mandates that the Board mail "a copy of its written decision to the claimant and the

claimant's authorized representative (if any)...."). Indeed, serious due process concerns would arise if the BVA reached a decision on a fee agreement which impinged upon the interests of the client without having provided the client with notice and the opportunity to be heard. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950) ("Due Process Clause ... require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). Recognizing that the issues—and parties—involved in the review of a fee agreement may be distinct and separate from those involved in the review of a substantive BVA decision with respect to benefits, this Court recently established a policy of creating a new docket number and case file for each such review. *See Jones v. Derwinski*, 1 Vet.App. 210, 212 (1991). It may well be that the BVA will follow suit.

We conclude, therefore, that it is appropriate, indeed necessary, for the BVA to communicate directly with a represented client in connection with the review of a fee agreement authorized and conducted under 38 U.S.C. § 3404(c)(2).

## B.

In addition to being premature because they were without legal authority (*see* Part III, *supra*), the fee agreement reviews initiated by the BVA in these cases were premature from a practical perspective as well. It is difficult to see how a properly informed review to determine whether, as a factual matter, a particular fee called for in a fee agreement is "excessive or unreasonable," 38 U.S.C. § 3404(c)(2), could be accomplished in the absence of a final decision on the questions of whether and what benefits will be awarded. Only after the proceedings have come to a close, and the amount of the fee is determined, can there be an informed decision whether a particular fee is, in fact, "excessive or unreasonable" under 38 U.S.C. § 3404(c)(2). *See also* 42 U.S.C. § 406 (1988) (in Social Secur-

ity cases, the Secretary or the court, as appropriate, may award a reasonable fee but only after a determination in favor of the claimant).

At oral argument counsel for the Secretary opined that the Board's review in the instant cases was motivated solely by concerns for the welfare of both the attorneys and their clients. By conducting a protective review, we are told, the Board apparently intended both to ensure that there was no misunderstanding on the part of the attorneys as to the legal limits imposed upon any fee which they might hope to recover pursuant to the fee agreement and to prevent differences and disputes from arising in the future between the representatives and their clients. In the first place, we are hopeful that any need for such a prophylactic exercise will dissipate once substantive fee agreement cases have been decided by the BVA and by this Court and practitioners are on notice of the legal standards for evaluating fee agreement arrangements. The promulgation of regulations by the Board, and the accretion of decisions by both the Board and this Court on fee agreements will serve to define the parameters of "excessive or unreasonable" and establish standards against which to evaluate fee agreements. Second, and even more significant, no matter how benign the Board's motivations may have been, it must be recognized that the premature review of fee agreements between attorneys and their clients may well interfere with the very core of the attorney-client relationship which must be firmly rooted in trust and confidence. This potential is removed and comprehensive review of the fee agreement can be accomplished once the proceedings have been completed.

## C.

There remains only one further issue to be discussed: the authority of the RO to contact represented parties directly with respect to fee agreements. Such contact occurred in *Nagler*, and although there was no RO contact with Mr. Snyder's client in *Jones*, the Court, taking notice of its own records, notes that there was such contact with at least one of Mr. Snyder's clients in

another case pending before this Court (*Collins v. Derwinski*, U.S.Vet.App. No. 90–1237 (Notice of Appeal filed on Oct. 26, 1990)).

The files of this Court contain unrebutted evidence that Regional Offices, on their own, not only have communicated directly with represented claimants in connection with fee agreements but have made statements which were outdated, wrong as a matter of law, and which, by their nature, could only have impacted adversely upon the relationship of the attorney-petitioners with their clients. In his Answer To Petition in *Nagler*, the Secretary states that the "purpose of the letter was to seek clarification as to whether the declaration of representation filed by Petitioner was intended to permanently revoke any pre-existing power of attorney in favor of a veterans service organization, or simply a limited revocation for the sole purpose of the then-pending claim." Answer of Appellee, at 15. This response fails to explain why the letter was sent to the client and not to his attorney. Moreover, the Secretary does not deny that erroneous information was communicated directly to claimants known to be represented but dismisses the communication—as did the BVA rather grudgingly, without any expression of regret, and without the demanded clarification—as inadvertent and not harmful. In our view, the Secretary's cavalier approach evidences a profound misunderstanding of the seriousness of this matter.

Prior to the enactment of the VJRA, an attorney could not charge more than $10 for representation before the VA on a benefits claim and any attorney who was found to have done so was subject to a fine and imprisonment. 38 U.S.C. §§ 3404(c), 3405 (1982). In order to encourage the representation of veterans, particularly before this Court, Congress lifted the $10 cap and amended 38 U.S.C. § 3404 to provide expressly for the payment of reasonable attorney fees. VJRA, § 104(a), 38 U.S.C. § 3404. Notwithstanding this explicit change in the law, the VA here effectively told the clients that, since their fee

agreements called for fees in excess of the (non-existent) $10 limit, they had entered into illegal fee agreements and that their attorneys were potential felons facing criminal fines and jail sentences. In at least one instance this communication was made on an official printed VA form dated November 1989, a full year after enactment of the VJRA provision lifting the $10 fee limitation (*Collins*).

It is difficult to conceive of a communication which a government agency could issue to an attorney's client which would be more injurious to a professional relationship. It is even more difficult to conceive of a reason why the RO should communicate with an attorney or a client concerning the terms of a fee agreement. The Secretary has not cited, and we have not found, any statutory authority for the review of fee agreements by Regional Offices or for any communication from Regional Offices with attorneys or their clients in connection with the terms of fee agreements. Nevertheless, the question must be asked whether this conduct could or should be addressed by the issuance of an extraordinary writ. During oral argument, the VA Deputy Assistant General Counsel advised that the new Chairman of the Board of Veterans' Appeals had attempted to remedy the problem by reminding all of the Regional Offices and, presumably his own staff, that obsolete forms, and obsolete legal advice must not be communicated.

Although the Chairman of the BVA may not have statutory or regulatory power to dictate policy to the Regional Offices, just as we trust that the Board will refrain from the premature and unauthorized review of fee agreements, we also trust that if additional steps need to be taken to prevent unauthorized and erroneous communications with represented clients the Secretary will take them. Under these circumstances, following the example of *Erspamer*, we decline to issue the writs requested by petitioners. We do note, however, that repetition of this egregious unprofessional conduct in the future can be addressed by a number of remedies, including extraordinary writs and sanctions.

### V.

■ As an alternative to an extraordinary writ, appellant in *Nagler* asks this Court to enter a declaratory judgment to the effect that the Secretary and his employees and agents have no authority to review fee agreements concerning representation solely before the Court. While the test for a declaratory judgment is not as severe as the standards for extraordinary writs, the considerations which militated against a writ in *Nagler* also counsel against a declaratory judgment. However, it is jurisdiction, not the merits, which is determinative of appellant's request.

The Declaratory Judgments Act, 28 U.S.C. § 2201 (1988), provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Unlike the All Writs Act, which uses the term "The Supreme Court and all courts established by Act of Congress[,]" 28 U.S.C. § 1651(a), section 451 of title 28 defines "court of the United States" as "the Supreme Court of the United States, courts of appeals, district courts ... the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." 28 U.S.C. § 451 (1988). The latter phrase refers to the life tenure of Article III judges.

This Court is not among those specifically enumerated in 28 U.S.C. § 451 and the judges of this Article I Court do not enjoy the life tenure of Article III judges who "are entitled to hold office during good behavior." *See* U.S. Const. art. III, § 1. Our appointments by the President are for a term of 15 years. *See* 38 U.S.C. § 4053 (1988). Thus, this Court does not possess the authority to issue declarative relief under the Declaratory Judgments Act.

Our reading is supported by a recent case which held that the United States Claims Court, also an Article I Court, does not have the authority to issue relief under the Declaratory Judgments Act. In *Over-*

*all Roofing & Construction Inc. v. United States*, 929 F.2d 687 (Fed.Cir.1991), the Federal Circuit held that the Claims Court lacked the authority to issue a declaratory judgment because its judges (like the judges of this Court) are appointed for terms of 15 years. "We think it would take a pointed and specific legislative enactment to fit the Claims Court into sections 451 and 2201." *Id.* at 688 (citation omitted). The same could be said of this Court; Congress could have chosen to give us the power to issue declaratory judgments under 28 U.S.C. § 2201, but it did not do so. We find nothing in the VJRA which would permit us to conclude that Congress ever intended for this Court to issue declaratory judgments. Moreover, the declaratory judgment requested here raises sovereign immunity concerns because it would be addressed to the United States or an officer or agency of the United States. Waivers of sovereign immunity cannot be implied; they must be explicit. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Accordingly, we must decline appellant's invitation to issue declaratory relief.

### VI.

■ The Court's orders dated March 27, 1991, enjoining the Secretary from reviewing fee agreements and contacting represented parties are vacated. In addition to petitioning for extraordinary writs, Mr. Smith and Mr. Nagler also moved for sanctions and attorneys fees for the cost of the petition under the EAJA, 28 U.S.C. § 2412, in *Nagler*. Those motions were ordered held in abeyance pending resolution of the petitions for extraordinary relief. Now that the Court has acted on the petitions, the motions are ripe for consideration. The EAJA provides for an award of attorney fees to a "prevailing party" unless the government can demonstrate that its position was "substantially justified" or that special circumstances would make an award unjust. 28 U.S.C. § 2412. A party is a prevailing party for the purpose of the EAJA if he or she succeeds "on any significant issue in litigation which achieves some of the benefits sought in bringing suit." *Anthony v. Bowen*, 848 F.2d 1278, 1281 (D.C.Cir.1988) (citations omitted). The Court having denied petitioner's request for extraordinary relief, petitioner is not a "prevailing party" as that term is used in the EAJA; therefore, the motion for attorney fees under the EAJA is denied. Similarly, finding insufficient basis for the imposition of sanctions under the circumstances, the motion for sanctions is denied.

The filing of petitions for extraordinary writs prompted the referral of these two cases to a three-judge panel. Now that the petitions and related motions have been considered and resolved, the cases will be referred to a single judge to facilitate further processing of the appeals in a manner consistent with the standard practice of the Court.

*It is so Ordered.*

STEINBERG, Associate Judge, concurring:

I concur in the Court's excellent opinion. I write separately to stress one point about the Court's holding in Part IV.A. of the opinion. In concluding that "it is appropriate, indeed necessary, for the BVA to communicate directly with a represented client in connection with the review of a fee agreement authorized and conducted under 38 U.S.C. § 3404(c)(2)" (*ante*, p. 304), the Court has resolved that question in the context of the attorney-client agreements presented in these two cases. Neither of those agreements provide explicitly that all contacts (including as to fee agreements) by the Department of Veterans Affairs (VA) with respect to particular claims for benefits by the client should be made with the attorney and not directly with the client. Were we presented with such a provision in an agreement and timely notice of it to VA, I believe we would have a very different matter to resolve.