**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 12-1829

Douglas L. Kelley, Petitioner,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Respondent.

Before MOORMAN, SCHOELEN, and PIETSCH, *Judges*.

**O R D E R**

On June 12, 2012, Mr. Kelley filed with the Court a petition for extraordinary relief in the nature of a writ of mandamus. Mr. Kelley requests that the Court issue a writ, in relevant part, (1) directing the Secretary to cease all verbal communications with him, without his attorney's prior knowledge, about any matter for which he retained counsel, and (2) ordering the Secretary to revoke and rescind the policy allowing personnel in the VA regional offices to directly communicate with attorney-represented claimants. The Secretary opposes the petition on the grounds that Mr. Kelley has not satisfied the elements warranting the issuance of a writ. For the reasons that follow, the Court will deny Mr. Kelley's request for extraordinary relief.

**I. BACKGROUND**

Mr. Kelley's disability compensation claims for hypertension, diabetes, and coronary heart disease were remanded by the Board of Veterans' Appeals (Board) in a September 29, 2011, decision to the VA regional office (RO) for further development.[1] On May 22, 2012, Mr. Kelley sent an email to the RO regarding his claims attaching copies of the email addressed to a number of individuals, including his attorney, U.S. House of Representatives and Senate staff, and the President. Mr. Kelley's email to the RO discusses his military service, remarks on the general delay

---

[1] The September 2011 Board decision was issued following an April 11, 2011, Court decision vacating a June 16, 2009, Board decision and remanding that decision for further adjudication. *Kelley v. Shinseki*, No. 09-2585, 2011 WL 1479469 (Vet. App. Apr. 9, 2011).

in adjudicating VA claims, and notes that, following the Board remand, he had undergone VA examinations and submitted a favorable private medical opinion to the RO.

In response to this email, on May 25, 2013, Tom Morley, an Assistant Service Center Manager for the Waco, Texas, RO contacted Mr. Kelley by telephone to report on the status of Mr. Kelley's claims. On this same date, Mr. Kelley emailed his attorney, reporting his telephone conversation with Mr. Morley. Mr. Kelley stated that Mr. Morley (1) confirmed that his claims file was at the RO, (2) stated that he would find out if the RO had received the VA doctor's opinion, (3) promised to get back in touch with him regarding that matter, and (4) assured him that the RO would continue to process his appeal.[2]

Soon afterward, in May and June 2012, Mr. Kelley's attorney several times communicated with staff from the RO and VA Central Office. On June 5, 2012, a staff member at the RO informed Mr. Kelley's attorney by email that VA had eliminated the "exclusive contacts" policy – outlined in the *Adjudications Procedures Manual Rewrite* (M21-1MR), pt. 1, ch. 3, sec. A.6 – with attorney-represented claimants. That policy required VA to honor, with certain exceptions, a written request from a claimant's attorney that VA not communicate directly with the claimant. The June 5 email from the RO stated that the new direct communication policy was consistent with VA statutes and regulations, which require VA to send written copies of decisions to the claimant *and* his counsel. The email also informed Mr. Kelley's attorney that the new policy was consistent with VA's established practice under the "exclusive contacts" policy to respond directly to claimants who seek information from VA.

On June 14, 2012, Mr. Kelley's attorney submitted a written request to the RO asking that VA not directly communicate with Mr. Kelley in any nonwritten manner. On June 15, VA again informed her via email that the "exclusive contacts" policy had been discontinued.

Shortly afterward, Mr. Kelley filed this petition alleging that the Secretary is communicating directly with the attorney-represented petitioner about his appeal"(1) prohibiting petitioner from benefitting from advice and representation of counsel and (2) interfering with the attorney-client

---

[2] The record also contains statements from RO personnel that summarize the substance of the telephone conversation between Mr. Morley and Mr. Kelley.

2

relationship."[3]  Petition for Writ at 1.  Mr. Kelley further alleges that issuance of a writ is "appropriate, necessary and required to prevent irreparable harm to [p]etitioner's right to counsel." *Id.*

## II. ANALYSIS

### A. Standard for the Issuance of a Writ

This Court has authority to issue extraordinary writs in aid of its jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See Cox v. West,* 149 F.3d 1360, 1363 (Fed. Cir. 1998). However, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court,* 426 U.S. 394, 402 (1976); *see also Lamb v. Principi,* 284 F.3d 1378, 1384 (Fed. Cir. 2002) ("'[E]xtraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial.'" (quoting *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 383 (1953))).  In *Erspamer v. Derwinski*, 1 Vet.App. 3, 7-8 (1990) the Court recognized that the circumstances justifying the issuance of a writ must be compelling. Quoting Judge, now Justice, Kennedy, the Court observed that

> "[t]he preemptory writ of mandamus has traditionally been used in federal courts to review nonfinal district court orders and is used only in exceptional circumstances.  (citations omitted).  Use of the All Writs Act in connection with agency matters has been even more rare and the scope of relief granted in these cases has been narrow.  (citations omitted).  The circumstances that will justify our

_____

[3] Mr. Kelley initially argued broadly that the Secretary's communication with him violated his Sixth Amendment right to counsel and his Fifth Amendment right to due process under the U.S. Constitution.  Mr. Kelley's counsel did not clarify, and in fact appeared to retreat from, these assertions during oral argument.  Accordingly, the Court will not address them in this decision.  *See Locklear v. Nicholson*, 20 Vet.App. 410, 416-17 (2006) (explaining that the appellant must provide reasons for his argument); *Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) ("The Court requires that an appellant plead with some particularity the allegation of error so that the Court is able to review and assess the validity of the appellant's arguments."), *rev'd on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008) (per curiam order).  Because the petitioner has not developed these vague assertions, he has not satisfied his burden of persuasion regarding these arguments.  *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table); *Berger v. Brown*, 10 Vet.App. 166, 169 (1997) ("[T]he appellant . . . always bears the burden of persuasion on appeals to this Court").

interference with nonfinal agency action must be truly extraordinary, for this court's supervisory province as to agencies is not as direct as our supervisory authority over trial courts. (citations omitted)."

*Erspamer,* (quoting *Pub. Util. Comm'r of Or. v. Bonneville Power Admin.,* 767 F.2d 622, 630 (9th Cir. 1985)) 1 Vet. App. at 7. Before the Court may issue a writ, three conditions must be satisfied: (1) the petitioner must demonstrate a clear and indisputable right to the writ; (2) the petitioner must demonstrate that he lacks adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute for the appeals process; and (3) the Court must be convinced, given the circumstances, that the issuance of the writ is warranted. *See Cheney v. U.S. Dist. Court,* 542 U.S. 367, 380-81 (2004).

## B. Indisputable Right to a Writ

### 1. Attorney Involvement in VA's Pro-Claimant System

Claims for VA benefits have traditionally been handled within VA on a nonadversarial, pro-claimant basis. *See, e.g.,* 38 U.S.C. § 5103(a) (Secretary is required to inform a claimant of the information and evidence, including any medical or lay evidence necessary to substantiate the claim); 38 U.S.C. § 5103A(a)(1) (Secretary has the duty to make "reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit"); 38 U.S.C. § 5107(b) (Secretary is required to review all the evidence regarding the claim, and if there is an approximate balance of positive and negative evidence, provide the claimant the benefit of the doubt); 38 U.S.C. §§ 5104 and 7104(d)(e) (claimant is entitled to written notice of decision on the claim); 38 C.F.R. §§ 3.103(c) and 20.1304 (2012) (claimant is entitled to have a hearing to submit evidence and information in support of the claim.).

During claims adjudication, a claimant for VA benefits may have representation. 38 C.F.R. § 3.103(a), (e). Claimants for VA benefits are most often represented in VA proceedings by representatives of national veterans service organizations, who may not charge a fee for their representation. 38 U.S.C. § 5902. However, attorneys may also represent claimants in the "preparation, presentation, and prosecution" of a claim for VA benefits and charge, in certain

circumstances, a fee for their service. 38 U.S.C. § 5904(a)(1).[4] For many years, an attorney could not charge more than $10 to represent a claimant before VA on a veterans benefits claim, and any attorney who did so was subject to a fine and imprisonment. 38 U.S.C. §§ 3404(c), 3405(1982). This limit was established during the Civil War to protect veterans from unscrupulous attorneys who charged excessive fees, at a time when the practice of law was not regulated by attorney licensing or bar associations. *See* S. REP. NO. 109-297, at 4 (2006) (discussing history of attorney representation before VA). Additionally, the fee limit was considered appropriate because VA claims were viewed as matters that were generally not complex and did not require legal expertise. *See Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 326 (1985). Moreover, the introduction of attorneys into VA claims adjudication was viewed as disruptive to the informal nature of VA claims adjudication. *Id.*

The Civil War limit on attorney fees remained in effect until 1988, when Congress passed the Veterans' Judicial Review Act of 1988 (VJRA), Pub. L. No. 100-687, 102 Stat. 4105 (1988), and created the current system for judicial review of the Secretary's decisions on the denial of claims for VA benefits. The VJRA repealed the $10 cap and allowed attorneys to charge a "reasonable fee" for representing VA claimants if the attorney was retained within one year of a final Board decision. 38 U.S.C. § 5904(c). Thus, the VJRA authorized attorneys to charge reasonable fees after VA proceedings had been completed and claimants appealed claims before the Court, but the act also continued to limit, as a practical matter, attorney involvement in the Secretary's administrative proceedings. This increased role for attorneys was considered appropriate given the enactment of judicial review of Board decisions. *See* S. REP. NO. 100-418, at 63 (1998)("The right to judicial review . . . would be a hollow right indeed without some easing of the limitation on attorneys' fees.").

In 2006, Congress further expanded the role of attorneys in the VA adjudication process with the passage of the Veterans Benefits, Health Care, and Information Technology Act of 2006 (2006 Act), Pub. L. No. 109-461, 120 Stat. 3406 (1988) (codified at 38 U.S.C. §5904(a)). Under the 2006 Act, attorneys are allowed to charge a "reasonable" fee for representation before VA or the Board

---

[4] Although the Court limits its discussion to attorneys for the purpose of this case, the Court recognizes that the statutory and regulatory framework also generally applies to nonattorney agents that charge fees for representation of claimants before VA.

after a Notice of Disagreement (NOD) has been filed, provided that the NOD was filed on or after June 2007. Therefore, the law greatly increased the opportunity for claimants to obtain attorney representation early in the claims adjudication process. In making this change, Congress recognized that there was increasing complexity in the VA claims process and that VA claimants should be able to exercise the right to choose their representatives while pursuing a VA benefits claim. *See* S. REP. NO. 109-297, at 20.

In integrating attorney representation into the VA adjudication system, VA implemented an "exclusive contacts" policy governing communications between RO personnel and represented claimants, which was contained in the M21-1MR pt. 1, ch. 3, sec. A.6. This policy required the RO to honor written requests from attorneys to refrain from communicating with their clients:

> If an attorney requests exclusive contact in writing . . . honor the request by generally *not* writing, calling, or otherwise contacting the claimant . . . . The Veterans Service Center Manager (VSCM) must ensure compliance with a POA [Power of Attorney] representative's request for exclusive contact. To avoid inadvertent contact with someone other than the representative, the VSCM should consider . . . flashing the claims folder, and . . . placing the file under level seven or above BDN/share control.

The exclusive contact policy contained certain exceptions that allowed the RO to (1) provide a direct response to a claimant's inquiry regarding his claim that was limited to the scope of the specific information requested by the claimant, (2) send written notices regarding decisions, as required by law, to the claimant with a copy to the attorney, (3) provide access to others, upon the consent of the claimant, of information in the claims folder relating to alcoholism, sickle cell anemia, drug abuse, and HIV, and (4) fulfill requests for information from a member of Congress or the White House for official use. *See* M21-1MR, pt. 1, ch. 3, sec. A.6d-g.

VA amended M21-1MR to eliminate the exclusive contacts policy, effective November 15, 2012.[5] The policy that replaces it states:

> VA does not honor requests by an attorney for exclusive contact to restrict the communication between VA and the claimant . . . . The term ***exclusive contact*** refers to sending communications with the claimant directly to a representative and generally *not* communicating directly with the claimant.

---

[5] Although the amendment to the M21-1MR was effective on November 31, 2012, VA apparently implemented the change in policy as early as May 2012, as discussed above.

M21-MR, Part I, Ch. 3, sec. A.6.[6] With the change in policy, RO personnel are instructed to send standard letters to respond to written requests from attorneys for exclusive contact. *Id*. The standard letter states:

> We are unable to comply with your request that we correspond exclusively with you and not with the VA claimant you represent.
>
> While VA has attempted in the past to accommodate exclusive contact requests the agency has found that our attempts to comply with these requests adversely impacted the timely completion of essential ministerial functions, such as responding to phone inquiries from claimants and the issuance of standard benefit information letters. Rather, as required by regulatory and statutory provisions, we have determined that corresponding directly with the VA claimant with a copy of each and every communication to the representative is the best means for keeping all interested persons up-to-date about VA 's actions regarding a particular claimant. This course of action is consistent with the non-adversarial nature of the VA benefits adjudication system and with VA statutes and regulations.
>
> To this end, section 5104(a) of title 38, United States Code, and its implementing regulation, 38 C.F.R. § 3.103, provide that VA must send notice of any decision to the claimant with a copy to the claimant's representative. VA statutes and regulations do not require a process whereby VA maintains "exclusive contact" with a representative in lieu of the VA claimant. At the same time, despite any request for exclusive contact with a representative, VA has always sent automatically generated correspondence to VA claimants and has responded to claimants who seek information directly from VA. As a result of our careful review of relevant VA statutes, regulations and procedures, we have determined that prohibiting veterans from receiving information, any information, about their claims, or limiting it in some fashion, is not a process that is beneficial to veterans, their dependents or survivors. We can assure you, however, that as long as you represent a VA claimant, you will be·sent copies of any and all notices, decisions or other written communications at the same time as the claimant is sent such notice, decision or communication.

VA RO Form Letter to Attorneys (announcing VA's 2012 new direct contact policy replacing exclusive contact policy). The apparent reason for this change, as expressed in the standard notice letter, is that the "exclusive contact policy" impeded the Secretary's ability to ensure timely

---

[6] The section of the M21-1MR dealing with payment of attorney fees already had been amended to reflect the change in the "exclusive contacts" policy. *See* M21-1MR, pt. 1, ch. 3, sec. C.14.d (Feb. 29, 2012) ("neither policy nor statute allows VA to communicate solely with the attorney or agent and not the claimant.").

completion of "ministerial functions," such as responding to claimant's phone inquiries regarding their claims and issuing standard benefits information letters to claimants.

## 2. Nagler *and* Jones

Mr. Kelley argues that he is entitled to a writ because the Secretary's verbal contact with him, pursuant to the new direct contact policy, "prohibit[ed] him from benefitting from advice and representation of counsel" and "interfer[ed] with the attorney-client relationship."[7] Mr. Kelley relies on *Nagler v. Derwinski*, 1 Vet.App. 297 (1991) and *Jones v. Derwinski,* 1 Vet.App 596 (1991), to argue that VA is prohibited from directly communicating with attorney-represented claimants.

In both decisions, the RO had erroneously, and without authorization, informed attorney-represented claimants for VA benefits that attorneys can not charge a fee for representation before VA in excess of $10 and referred to the Federal criminal sanction for a fee violation. The attorney-petitioners sought a writ in *Nagler* to prohibit the RO from directly contacting attorney-represented clients with respect to fee agreements and from providing them with erroneous information that adversely affects the attorney-client relationship. The Court concluded that the statements in the letter to the petitioner-attorneys' clients were "outdated, wrong as a matter of law," and "could have only impacted adversely upon the relationship of the attorney-petitioners with their clients." 1 Vet.App. at 305. In *Nagler*, the Court also declined to issue a writ because the Secretary

---

[7] The petitioner raised two arguments during oral argument that the Court will not address. He argued that the amendment of the "exclusive contact" policy was invalid because the Secretary did not provide proper notice and comment prior to changing the policy. Additionally, Mr. Kelley argued that the American Bar Association's Model Rules of Professional Conduct bar communication between RO personnel and attorney-represented claimants. The Court has repeatedly discouraged parties from subsequently raising arguments that were not presented in an initial brief to the Court. *See Carbino v. West,* 168 F.3d 32, 34 (Fed. Cir.1999) ("[I]mproper or late presentation of an issue or argument . . . ordinarily should not be considered."), *aff'g sub nom. Carbino v. Gober,* 10 Vet.App. 507, 511 (1997) (declining to review argument first raised in appellant's reply brief); *Untalan v. Nicholson,* 20 Vet.App. 467, 471 (2006); *Tubianosa v. Derwinski,* 3 Vet.App. 181, 184 (1992) (appellant "should have developed and presented all of his arguments in his initial pleading"); *Fugere v. Derwinski,* 1 Vet.App. 103, 105 (1990) ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation."). Because these arguments were raised late in the process, the Court declines to address them.

represented that he was taking corrective measures to ensure that there would be no future erroneous communications to represented claimants. *Id.* at 306.

In *Jones*, the petitioners, who had been consolidated as parties in *Nagler*, filed a second writ to prohibit the RO from continuing to make direct contact with represented clients with respect to fee agreements and from providing them with the same erroneous information. 1 Vet.App. at 596. In *Jones*, the Court issued the writ after concluding that, despite the Secretary's assurances that corrective measures had been taken, VA continued to send the represented clients damaging information regarding the nature and scope of permissible attorney fees, including information implying that the petitioner-attorneys engaged in criminal activity by charging a fee in excess of $10. *Id.* at 599. Additionally, the Court directed VA to delete language from VA Form 2-22a (1991), entitled "Appointment of Attorney or Agent As Claimants Representative, which the Court concluded was "unauthorized, misleading and damaging" regarding fee agreements. *Id.* at 603.

Mr. Kelley argues that *Jones* expressly held that *all* "VA communication to represented claimants is unauthorized" unless the communication is either (1) expressly provided by statute, (2) involves the Secretary's "'quasi-judicial'" function of reviewing the reasonableness of attorney fees, or (3) entails an investigation into a complaint of improper or unauthorized practice or conduct by a representative in VA proceedings pursuant to section 5904 (a) and (b). *Id.* at 604. Mr. Kelley's reliance on *Jones* is misplaced because he takes the holding in *Jones* out of context. *Jones* makes clear that the prohibited VA communication to which it referred was limited to matters regarding the substance, nature, and scope of fee agreements. Thus, contrary to Mr. Kelley's arguments, *Jones* did not broadly hold that the RO cannot communicate directly with claimants who are represented by counsel. In fact, the writ issued by the Court in *Jones* was tailored narrowly to bar the RO from contacting VA claimants regarding fee agreements. *Id.* at 608.

The petitioner's case is also distinguishable from *Jones* and *Nagler* in other important respects. In those decisions, the Court found the RO communications objectionable not specifically because they were made without notice to counsel but because the petitioners were given outdated, erroneous information, which by its nature was damaging to the attorney-client relationship because it implied that by representing the claimants and charging a fee for that service, the attorney was engaged in illegal and criminal behavior. The Court in *Nagler* stated that "[i]t is difficult to conceive

9

of a communication which a government agency could issue to an attorney's client which would be more injurious to a professional relationship."  1 Vet.App. at 306.  In addition, the Court found that the RO did not have the authority to review fee agreements and thus lacked the authority to communicate with claimants about those agreements.

Here, the May 25, 2012, verbal contact between the RO and Mr. Kelley lacked these characteristics.[8]  Rather, Mr. Kelley's conversation with the RO was limited to a brief discussion of the status of his appeal.[9]  Although the crux of Mr. Kelley's argument is that the RO "interfered" with his attorney-client relationship, he has not shown that his conversation with the RO hampered his attorney-client relationship or hindered, in any way, his attorney's ability to assist him in preparing, presenting, or prosecuting his claims for disability compensation.  Similarly, Mr. Kelley has not shown that the RO solicited information or evidence from him without allowing him to consult with his attorney.  *Cf. Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1118 (5th Cir. 1980) (holding that trial court order that prevented a client from communicating with his attorney during trial breaks impinged on his right to counsel).  In short, Mr. Kelley has not established that his limited conversation with RO personnel has interfered with his attorney-client relationship.

*3. Attorney's Inability To Learn of Content of Conversation*

Apparently aware that Mr. Kelley's petition fails to disclose evidence that his conversation with the RO interfered with his attorney-client relationship, Mr. Kelley's attorney argues that, because she was not part of the conversation, there is no way for her to know whether Mr. Kelley made any prejudicial statements against his interest, such as "waiving legally significant rights or losing significant VA benefits or both."  Petition at 12.  She speculates that Mr. Kelley could have made a statement that negatively affected his claim, and that she will never learn of this statement. The Court is not persuaded by this argument for several reasons.

---

[8]  Mr. Kelley has not alleged that VA has further contacted him directly.

[9]  Mr. Kelley fails to recognize that under the old "exclusive contact" policy, VA was authorized to respond directly to a claimant's inquiry regarding a claim.  Although Mr. Kelley argues that VA's contact with him under the new direct contact policy is prohibited, he has failed to show that the RO's communication with him extended beyond the boundaries of an authorized contact under VA's old "exclusive contact" policy.

First, the record contains fairly contemporaneous accounts from Mr. Kelley and the RO regarding the substance of their conversation, and there is no indication from either account to support this assertion. Second, VA has policies in place to ensure that representatives become aware of the substance of any telephone conversation between RO employees and claimants. Following a telephone contact with a claimant, an RO employee is instructed to document the call by summarizing it on VA Form 21-0829, Report of General Information. M21-1MR, pt. III, subpt. iii, ch.1, sec. B.2.e. This form must be placed in the claimant's claims file and a copy must be sent to the person who holds the claimant's power of attorney.[10] *Id.* Additionally, any decision notice to a claimant must refer to any oral information that the RO received from the claimant and was used to determine the claimant's entitlement to a VA benefit. *See* M21-1MR, pt. III, subpt. iii, ch. 1, sec. B.2.f; *see also* 38 U.S.C. § 5104(b) (requiring RO to provide claimants with notice of a "statement of the reasons for decision" for denying a claim and a "summary of the evidence considered by the Secretary" in a decision denying a claim); 38 C.F.R. §§19.29-19.31 (2012). Therefore, the petitioner's attorney is not likely to be kept in the dark or left to speculate regarding any statements the petitioner may have made that can negatively affect his claims.

### 4. Balance Between Duty To Assist and Right To An Attorney

Although the Court recognizes that, pursuant to his duty to assist a claimant in developing a claim under section 5103A, the Secretary may respond to inquiries from claimants regarding their claims, the Court is concerned that the new direct contact policy is unlimited in its scope.[11] The nature of VA communications with claimants can fall along a wide spectrum, spanning simple ministerial matters at one end to more complex substantive matters at the other. In this case, the RO's communication with Mr. Kelley regarding the status of his appeal concerned a ministerial

---

[10] The Court notes that the record does not contain a VA Report of General Information Form relating to the conversation referred to in the petition. Nevertheless, there are other documents in the record prepared by VA personnel that the petitioner has been provided that summarize the content of the conversation.

[11] The Court is also aware that the Board and the RO must provide expeditious treatment of matters on remand. *See* 38 U.S.C. §§ 5109B, 7112.

matter (processing status) that fell far toward the former end of the spectrum. There is little question that this type of communication would not interfere with the attorney-client relationship. However, under the new direct contact policy the RO can conceivably communicate directly with an attorney-represented claimant at a level that can interfere with the attorney-client relationship.

In the past, the Secretary has shown flexibility in adapting the VA adjudication scheme to accommodate the integration of attorneys into the system. For example, when VA promulgated regulations regarding the standards of conduct governing those representing claimants before VA, the Secretary had first proposed that representatives "conduct themselves in accordance with the non-adversarial nature of practice before the [RO] and the Board." 73 Fed. Reg. 29,860 (May 22, 2008). However, after receiving comments that this language could conflict with an attorney's obligation to zealously represent clients, the Secretary modified the regulatory language to remove the requirement that representatives conduct themselves in accordance with the nonadversarial nature of practice before VA. In doing so, the Secretary recognized that when Congress increased the opportunities for attorneys to represent claimants before VA, it intended that "VA's adjudication system shall be flexible enough to permit agents and attorneys to act as advocates for their client[s] in contested matters." *Id.* The Court is thus concerned that if the direct contact policy extends to communications with claimants on more-than-ministerial matters, not only will the policy undermine the Secretary's past efforts to adjust the VA claims process to accommodate attorney representation of claimants, but the policy also risks enabling RO personnel to converse with a represented claimant in a manner that crosses the line and violates a claimant's statutory right to counsel.

The Court is also concerned that an open-ended policy may undermine the value of retaining an attorney. If VA does not channel its communications through the attorney, and instead communicates directly with a represented claimant, the claimant may wonder why he should retain an attorney. The Secretary's new direct contact policy may furthermore discourage a claimant from retaining counsel, if despite retaining skilled counsel, the claimant nonetheless must field calls from VA and bear the burden of communicating with the RO.

Additionally, VA ostensibly adopted the direct communication policy to promote expedited handling of ministerial matters. However, VA offered no evidence or data to demonstrate that the

new policy will expedite matters. In fact, the new policy may add needless delay if a cautious claimant, following his attorney's advice, consults with that attorney before responding to an inquiry from the RO. Rather than expediting the claim, needless confusion may ensue, which can further delay proceedings before VA.

Nevertheless, although the Court is concerned about the open-ended nature of the direct contact policy, Mr. Kelley has not shown that the RO's direct communication inhibited him from obtaining advice from his attorney, or otherwise interfered with the attorney-client relationship. Because Mr. Kelley has not shown that the Secretary has violated his statutory right to counsel in proceedings before VA, he has not shown that he has a clear and indisputable right to a writ.

## C. Other Elements for Obtaining a Writ

In order to obtain a writ, Mr. Kelley must demonstrate a lack of adequate alternative means to obtain the relief sought and that the issuance of a writ is warranted. *Nagler*, 1 Vet.App. at 303. Because Mr. Kelley has not demonstrated that he has a clear and indisputable right to the writ, the Court does not need to address whether there is an adequate alternative remedy or the issuance of a writ is warranted. For the reasons discussed above, the Court will deny the petition.

## III. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the petitioner's petition for a writ of mandamus is DENIED.

DATED: May 3, 2013                                                              PER CURIAM.

13