# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-4361

JAMES A. GODSEY, JR., ET AL., PETITIONERS,

v.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before PIETSCH, BARTLEY, and ALLEN, *Judges.*

## O R D E R[1]

Before February 19, 2019, a claimant dissatisfied with a VA benefits decision could appeal that decision to the Board of Veterans' Appeals (Board) by filing a Notice of Disagreement (NOD) and, ultimately, a Substantive Appeal.[2] 38 U.S.C. § 7105(a) (2018); *see Murphy v. Shinseki*, 26 Vet.App. 510, 514 (2014). Once a claimant filed a Substantive Appeal, VA would certify the case and transfer the appellate record to the Board. *See* 38 C.F.R. § 19.35 (2018). In 2017, when the instant petition was filed, it took VA, on average, 773 days to certify a case to the Board after receiving a Substantive Appeal and an additional 321 days after that to transfer the appellate record. BOARD CHAIRMAN'S FISCAL YEAR 2017 ANNUAL REPORT (2017 BOARD ANNUAL REPORT) at 25, *available at* https://www.bva.va.gov/docs/Chairmans_Annual_Rpts/BVA2018AR.pdf.

The petitioners argue that taking nearly three years to complete these tasks is unreasonable and deprives them of their constitutional right to due process. They request, on behalf of themselves and a class of similarly situated claimants, that the Court compel the Secretary to expedite the appeals certification and transfer process. Petition (Pet.) at 1-2. The Court agrees that judicial intervention is necessary and, for the reasons that follow, will modify and certify the class proposed by the petitioners and grant the petition for extraordinary relief in the nature of a writ of mandamus.

---

[1] The Court held oral argument in this case at Liberty University School of Law in Lynchburg, Virginia, on February 21, 2019. The Court extends its appreciation to the law school for its hospitality.

[2] The Veterans Appeals Improvement and Modernization Act of 2017 (VAIMA) overhauled the process for appealing VA benefits decisions, including by creating different types of agency review and allowing claimants to select among those options. *See* Pub. L. No. 115-55, 131 Stat. 1105, § 2 (Aug. 23, 2017). Although VAIMA was enacted on August 23, 2017, the Secretary's regulations implementing VAIMA did not become effective until February 19, 2019. *See* VA Claims and Appeals Modernization, 84 Fed. Reg. 138 (final rule) (Jan. 18, 2019); VA Claims and Appeals Modernization, 84 Fed. Reg. 2,449 (notification of effective date) (Feb. 7, 2019). One of those regulations, 38 C.F.R. § 3.2400, specifies that VAIMA does not apply to claims decided before February 19, 2019, unless the claimant elects to have the decision reviewed under the modernized system. 38 C.F.R. § 3.2400(b) (2018). Claims decided before that effective date are called "legacy claims" and appeals under the pre-VAIMA system are called "legacy appeals." *Id*.

# I.  PRELIMINARY MATTER

As an initial matter, the Court wants to be clear that, by deciding class certification and the merits of the underlying petition in a single order, it is not adopting a general policy or framework for deciding such matters concurrently in future cases.  However, given the unique circumstances surrounding this case, particularly the nature of the alleged injury and the need for rapid remedial action, the Court has concluded that resolving both matters in a single order is appropriate here. *See Quinault Allottee Ass'n & Individual Allottees v. United States*, 453 F.2d 1272, 1276 (Fed. Cl. 1972) (deciding requests for class certification on a case-by-case basis, "gaining and evaluating experience" on an ad hoc basis before adopting general class certification rules).

# II.  BACKGROUND

## A.  The Petition

On November 15, 2017, veterans James A. Godsey, Jr., Jeffery S. Henke, Thomas J. Marshall, and Pamela Whitfield filed through counsel a petition for extraordinary relief in the nature of a writ of mandamus.  The petitioners stated that they had each filed a Substantive Appeal at least three years earlier and that, as of the date of the petition, VA had not yet certified any of their cases to the Board.  Pet. at 5-6.  The petitioners alleged that the Secretary's failure to timely certify their cases to the Board violated their right to procedural due process under the Fifth Amendment to the U.S. Constitution, constituted agency action unlawfully withheld or unreasonably delayed within the meaning of 38 U.S.C. § 7261(a)(2) and 5 U.S.C. § 555(b), and violated their statutory right under 38 U.S.C. § 7107(a)(1) to have their appeals "considered and decided [by the Board] in regular order according to its place upon the docket."  Pet. at 1-2, 7-13.  The petitioners also asserted that such "extreme" certification delays are typical of the legacy appeals system and are likely encountered by hundreds, if not thousands, of claimants across the country. *Id*. at 6.

Accordingly, the petitioners requested, on behalf of themselves and a class of similarly situated individuals, that the Court issue a writ of mandamus compelling the Secretary, within 60 days, to certify and transfer to the Board all cases that have been waiting two years or more for certification following the timely filing of a Substantive Appeal. *Id*. at 1-2.

## B.  Certification and Transfer of the Appellate Record

Before turning to the merits of the petitioners' arguments, it is necessary to outline the specific VA processes at the heart of this dispute: certification of a case and the transfer of the appellate record to the Board.

### 1.  Pre-Certification Review

Per the *VA Adjudication Procedures Manual* (M21-1), after a claimant files a Substantive Appeal, his or her case is to be sent to a higher level employee at the VA regional office (RO), such as a decision review officer (DRO), who is to review the case to determine whether it is ready to be certified and sent to the Board.  M21-1, pt. 1, ch. 5, § F.3.f.  This determination is called

"initial review of evidence," *id.*, §§ F.3.b-d, but for purposes of this order the Court refers to it as pre-certification review. Pre-certification review is to entail verifying that all entries in the electronic Veterans Appeals Control and Locator System (VACOLS) are correct and up-to-date, identifying whether relevant evidence has been obtained and that the duty to assist has otherwise been met, checking whether all relevant claims processing documents have been issued and included in the file, and ensuring that the necessary appeal documents are in the electronic Veterans Benefits Management System (VBMS). *Id.*, §§ F.3.g-h. If, as a result of pre-certification review, the RO assesses that no further development or adjudication is necessary, the case is certified as explained below. *Id.*, §§ F.3.c, h.

### *2. Additional Development and Adjudication After Pre-Certification Review*

If as a result of pre-certification review the RO assesses that further development and adjudication is necessary, that is, if it identifies outstanding evidence that has not yet been obtained, evidence received from the claimant that has not yet been reviewed along with a written request that the RO review that evidence in the first instance, an issue or argument that has not yet been developed or adjudicated, or a claimant request for further development, the RO is to take additional steps after pre-certification review to conduct the necessary development or adjudication activities and, only after such steps have been taken, certify the case to the Board. *Id.*, §§ F.3.c-d; *see also* 38 C.F.R. § 19.37 (2018).

### *3. Actual Certification*

Once pre-certification review is complete and once any necessary development or adjudication has taken place after completion of pre-certification review, the RO is to generate a VA Form 8, Certification of Appeal, the completion of which signifies that the case is ready to be transferred to the Board. *Id.*; *see* 38 C.F.R. § 19.35 (2018) (indicating that "[c]ertification is accomplished by the completion of VA Form 8," which "is used for administrative purposes and does not serve to either confer or deprive the Board[]of jurisdiction over an issue"); *see generally* M21-1, pt. 1, ch. 5, § F.9.a (VA's appeal certification worksheet).

VA's Table of Work-Rate Standards for Adjudication Activities indicates that certification of a case to the Board, apparently including pre-certification review but excluding additional development and readjudication, should take 1.59 hours for non-rating cases, 2.6 hours for rating cases, and 4.19 hours for cases that involve both types of issues. VA MANPOWER CONTROL AND UTILIZATION IN ADJUDICATION DIVISIONS MANUALS (M21-4), Appx. B, § III. Nevertheless, in 2017, a claimant waited, on average, 773 days from the filing of a Substantive Appeal for the RO to complete the certification process. *See* 2017 BOARD ANNUAL REPORT at 25.

### *4. Transfer of File to the Board*

"Once the RO completes all steps of the certification process, the appellate record must be immediately transferred to [the Board]." M21-1, pt. 1, ch. 5, § F.4.a. However, before transferring the record, the RO is supposed to conduct one more review of VACOLS to ensure that all information has been updated and, if necessary, prepares the paper claims folder to be sent to the scanning vendor. *Id.*, §§ F.4.c-e. After that, the RO will transfer the case to the Board. *Id.*, § F.4.e;

3

*see generally id.*, § F.10 (VA's checklist for transferring certified cases to the Board).  In 2017, claimants waited, on average, 321 additional days for the RO to transfer the appellate record to the Board.  *See* 2017 BOARD ANNUAL REPORT at 25.

### 5. *Receipt & Docketing at the Board*

Upon receipt at the Board, the case is "screened" and formally docketed, at which point a docket number is assigned based on the date of filing of the Substantive Appeal.  THE PURPLE BOOK 72 (version 1.0.2, Sept. 2018).

### 6. *Summary*

In sum, the post-Substantive Appeal process can be broken down into the following stages: (1) pre-certification review; (2) if necessary, any additional development and/or readjudication identified during pre-certification review; (3) certification; (4) transfer to the Board; and (5) receipt and docketing at the Board.  The petitioners do not differentiate between these stages; instead, they argue that the entire certification and transfer process—from the filing of a Substantive Appeal to docketing at the Board—takes too long.  But these different stages matter when assessing whether aggregate relief is appropriate in this case.  We address that issue in part IV, below.  However, before doing so, we must satisfy ourselves that the petition has not become moot by virtue of the Secretary's actions since the filing of the petition.

### III.  MOOTNESS

#### A.  The Petitioners' Underlying Claims

In May 2018, six months after the petition was filed, the Secretary notified the Court that each of the petitioners had either had their case certified to the Board or their requested benefits granted in full by the RO.  *See* Secretary's *Solze* Notice.  The pleadings filed by both parties reveal the following relevant facts:

Mr. Godsey attempted, in January 2014, to perfect an appeal of various claims denied by the Indianapolis RO by filing a statement in support of claim (SCC) in lieu of a Substantive Appeal.  Pet. at Exhibits (Exs.) D-2, D-3.  However, the RO failed to recognize the SCC as a Substantive Appeal and closed the case in March 2014.  Secretary's Amended Response to the Petition (Resp.) at Ex. A.  The RO realized this mistake one year later when reviewing Mr. Godsey's claims file in connection with another claim and reinstated the previously closed appeal.  *Id*.  In July 2017, while preparing to certify the case to the Board, a DRO determined that an addendum to a January 2010 VA medical examination was necessary, which it obtained in September 2017.  *Id*.  After speaking with Mr. Godsey in November 2017, the RO attempted to obtain updated VA treatment records, which were received in January 2018.  *Id*.  The RO, however, issued a Supplemental Statement of the Case (SSOC) in January 2018 before it had received those records; as a result, in March 2018 the RO contacted Mr. Godsey to see if he would waive RO consideration of those records in order to move the appeal to the Board.  *Id*.  Mr. Godsey submitted a waiver later that month and the appeal was ultimately certified to the Board on March 30, 2018.  *Id*.; *see also* Secretary's *Solze* Notice at 1.

Mr. Henke perfected his appeal of a respiratory claim denied by the Indianapolis RO by filing a Substantive Appeal in November 2012. Pet. at Ex. D-7. In January 2013, before the case was certified to the Board, he requested an RO hearing, which was held in December 2016. Secretary's Amended Resp. at Ex. B. A new VA respiratory examination was requested later that month and was provided in March 2017; however, the examination was determined to be inadequate due to lack of an etiology opinion. *Id.* After numerous attempts to obtain a non-speculative opinion from the examiner and additional treatment records, the RO, on November 30, 2017, issued a rating decision granting his claim for service connection, which the RO characterized as fully resolving the issue on appeal. *Id.*; *see also* Secretary's *Solze* Notice at 1.

Mr. Marshall filed a Substantive Appeal in May 2014 as to claims denied by the Columbia RO. Pet. at Ex. D-11. Later that month, before his case was certified to the Board, his veterans service organization (VSO) representative requested that a VA examination that the veteran missed because he was hospitalized be rescheduled. Secretary's Amended Resp. at Ex. C. The examination was rescheduled for December 2015, but Mr. Marshall missed it and asked for it to be rescheduled again. *Id.* In February 2016, the RO requested and received additional private treatment records. *Id.* The RO submitted another examination request in May 2016. *Id.* It is unclear if that examination was ever conducted because, on November 28, 2017, the RO issued a DRO decision granting the appealed claims, which it characterized as a complete grant of the benefits sought on appeal. *Id.*; *see also* Secretary's *Solze* Notice at 2.

Ms. Whitfield filed her Substantive Appeal in November 2011, challenging the Roanoke RO's denial of a claim for an increased evaluation in excess of 10% for status post Morton's neuroma removal with residual scar. Pet. at Ex. D-15. Over the next six years, Ms. Whitfield filed various other claims that were processed by the RO. Secretary's Amended Resp. at Ex. D. In November 2017, the RO issued an SSOC, but it is unclear from the evidence before the Court whether the SSOC addressed the Morton's neuroma claim or the other claims. *Id.* However, on February 13, 2018, the RO certified the Morton's neuroma claim to the Board. *Id.*; *see also* Secretary's *Solze* Notice at 2.

## B. The Petition Is Not Moot

In his June 2018 response to the petition, the Secretary argued, inter alia, that the petition was moot, and that the request for class certification should therefore fail, because the petitioners had been granted the relief sought and no longer had a continuing stake in the outcome of the litigation. Secretary's Amended Resp. at 11-12. The petitioners countered that the case was live when they filed their petition and urged the Court to deem the petition justiciable due to the inherently transitory nature of the complained of conduct—namely, the Secretary's failure to timely certify their cases to the Board. Petitioners' Reply at 6-7. The Court agrees with the petitioners that, although they ultimately received the relief they requested before the Court ruled on their petition, the case is not moot and can be decided on the merits.

This Court adheres to the case-or-controversy jurisdictional requirements imposed by Article III of the U.S. Constitution. *Cardona v. Shinseki*, 26 Vet.App. 472, 474 (2014) (per curiam order); *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990). A case or controversy ceases to exist, and

a case becomes moot, "'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). When a case becomes moot during the course of litigation, the proper outcome is to dismiss the case for lack of jurisdiction, unless an exception to mootness applies. *See Browder v. Shulkin*, 29 Vet.App. 179, 172 (2017) (per curiam); *Fabio v. Shinseki*, 26 Vet.App. 404, 405 (2013).

The U.S. Supreme Court faced a mootness argument similar to the one presented in this case in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). In *McLaughlin*, plaintiffs brought a class action suit against the County of Riverside, California, alleging that its policy of waiting until arraignment to determine whether there was probable cause to arrest individuals without a warrant violated the Fourth Amendment requirement that States provide prompt probable cause determinations to warrantless arrestees. 500 U.S. at 47. Before the Supreme Court, the County argued that the case was moot because the named plaintiffs had all received probable cause determinations years earlier and, due to the "time-limited" nature of the complained-of violation, they could not now receive the prompt probable cause hearing that they were allegedly denied. *Id.* at 50-51. The Supreme Court rejected that argument, highlighting that, at the time the plaintiffs filed their complaint, they had been arrested without warrants and were being held in custody without having received a probable cause determination, they were suffering a direct and current injury as a result of that detention that would continue until they received the probable cause determination to which they were entitled, and their injury was, at that moment, capable of being redressed through injunctive relief. *Id.* at 51. The Supreme Court stated:

> It is true, of course, that the claims of the named plaintiffs have since been rendered moot; eventually, they either received probable cause determinations or were released. Our cases leave no doubt, however, that by obtaining class certification, plaintiffs preserved the merits of the controversy for our review. In factually similar cases we have held that "the termination of a class representative's claim does not moot the claims of the unnamed members of the class." That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction. We recognized in *Gerstein* [*v. Pugh*, 420 U.S. 103 (1975),] that "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." In such cases, the "relation back" doctrine is properly invoked to preserve the merits of the case for judicial resolution.

*Id.* at 51-52 (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980)) (internal citations omitted); *see generally Demery v. Wilkie*, 30 Vet.App. 430, 443 (2019) (discussing the "relation back" doctrine). As the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) explained in *Monk v. Shulkin*, "A 'class-action claim is not necessarily moot upon the termination of the named plaintiff's claim' in circumstances in which 'other persons similarly situated will continue to be subject to the challenged conduct,' but 'the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course.'" 855 F.3d 1312, 1317 (Fed. Cir. 2017) (quoting *Genesis Healthcare Corp. v. Symczyk*, 589 U.S. 66, 67 (2013)); *see Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090

(9th Cir. 2011) ("An inherently transitory claim will certainly repeat as to the class, either because '[t]he individual could nonetheless suffer repeated [harm]' or because 'it is certain that other persons similarly situated' will have the same complaint." (quoting *Gerstein*, 420 U.S. at 110 n. 11)). That line of reasoning applies with equal force here.

When the petitioners filed their petition in November 2017, they had all been waiting over two years since the filing of their Substantive Appeals for VA to certify their respective cases to the Board. Pet. at 5-6. They would continue to be harmed by that delay until VA either granted benefits or certified their cases to the Board, and the injury they were suffering at that time was redressable by the injunctive relief they requested in their petition. *See McLaughlin*, 500 U.S. at 51. Most importantly, the delay the petitioners were experiencing when they filed their petition was inherently transitory because VA could, and did, extinguish their individual interests in the outcome of the class action petition before this Court had the opportunity to rule on their request for class certification. *See id.* at 52; *Geraghty*, 445 U.S. at 399.

Although the period at issue in this case is considerably longer than the one in *McLaughlin*, the inherently transitory exception to mootness may nevertheless be applied here because the petitioners' claims are not only unavoidably time-sensitive, but are also "acutely susceptible to mootness" due to the Secretary's history of mooting petitions before judicial resolution. *Pitts*, 653 F.3d at 1091 (applying the inherently transitory exception where plaintiffs' claims were likely to be mooted by the defendant's tactic of "picking off" lead plaintiffs with an offer of settlement to avoid a class action because "[t]he end result is the same: a claim transitory by its very nature and one transitory by virtue of the defendant's litigation strategy share the reality that both claims would evade review"); *see Monk*, 855 F.3d at 1321 (noting the Secretary's practice of mooting cases scheduled for precedential decision). Indeed, the Federal Circuit has indicated that this is precisely the situation where aggregate action is most appropriate to avoid such mootness concerns. *See Ebanks v. Shulkin*, 877 F.3d 1037, 1040 (Fed. Cir. 2017) (noting that complaints of systemic delay in VA claims processing are "best addressed in the class-action context" to avoid mootness and provide class-wide relief).

Accordingly, the Court concludes that, although the petitioners have now each had their cases resolved or certified to the Board, their petition is not moot because they presented a live case-or-controversy at the time that they filed their petition and the Secretary's conduct that they challenged in the petition was so inherently transitory that it was capable of evading review. Having resolved the mootness dispute, we now move to the class certification issue.

## IV. CLASS CERTIFICATION

In *Monk*, the Federal Circuit held that this Court has the "authority to certify a class for class action or similar aggregate resolution procedure." 855 F.3d at 1321. The Federal Circuit declined to prescribe a specific framework for the Court to use to determine whether class certification is appropriate, *id.* at 1321-22, and, to date, the Court has not devised its own rules for certifying a class. However, in *Monk v. Wilkie*, 30 Vet.App. 167, 170 (2018), the Court determined that we would use Rule 23 of the Federal Rules of Civil Procedure (Rule 23) as a guide for deciding requests for class certification until we issue our own aggregate action rules. *See Thompson v. Wilkie*, 30 Vet.App. 345, 346 (2018) (applying Rule 23 to petitioner's request for class

7

certification). We therefore proceed to consider the instant request for class certification under that framework.

Under Rule 23(a), the party seeking class certification must demonstrate that

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *see Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 345 (2011). The party must also demonstrate that the action is maintainable as a class under Rule 23(b). FED. R. CIV. P. 23(b); *see Amchem Products, Inc.*, *v. Windsor*, 521 U.S. 591, 614 (1997). To do so here, the petitioners must establish that the Secretary "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

## A. Commonality

We begin our Rule 23(a) analysis with commonality, a requirement that has proven problematic for prior class action petitioners at this Court. *See Monk*, 30 Vet.App. at 175-81. In *Wal-Mart*, the Supreme Court held that Rule 23(a)(2) requires a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. at 350. The Supreme Court emphasized that "'[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 132 (2009)). The existence of even one such question is sufficient to satisfy the Rule 23(a)(2) commonality requirement. *Id.* at 359.

In *Monk*, a plurality of the en banc Court found that a petition that alleged that the total time it took for VA to decide a veteran's benefits appeal—from the filing of an NOD with an RO decision to the issuing of a Board decision—was unconstitutionally or unreasonably long lacked commonality because it did not identify a "common question for the petitioners' and putative class's cause of delay." 30 Vet.App. at 181. Although that position was not adopted by a majority of the en banc Court, *see id*. at 184-205, the plurality indicated that "a class proceeding may be an appropriate vehicle to challenge systemic deficiencies . . . when the putative class targets specific polices or practices that allegedly violate the law." *Id*. at 181 (citing *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014)).

The petitioners in this case have sought certification of a class of all VA benefits claimants who have waited more than two years from the filing of their Substantive Appeals for VA to certify and transfer their cases to the Board. Included in that class would be not only claimants who are

8

standing in line simply waiting for pre-certification review, but also those receiving additional development and readjudication resulting from pre-certification review. *See supra* pt. II.B.

Factual and legal differences among class members' claims will prove fatal to commonality when those differences "'have the potential to impede the generation of common answers'" to the questions proposed by the class. *Wal-Mart*, 564 U.S. at 350 (quoting Nagareda, 84 N.Y.U. L. REV. at 132)). The petitioners here have identified legal and factual questions that they believe are common to this putative class; namely, whether a two-year delay to certify and transfer cases to the Board constitutes a per se violation of class members' due process rights or is per se unreasonable under *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) (*TRAC*), and *Martin v. O'Rourke*, 891 F.3d 1338 (Fed. Cir. 2018). *See* Pet. at 17; Petitioner's Reply at 2-4. The question whether differences such as those here would impede the generation of common answers divided the Court in *Monk*. To the extent that the *Monk* plurality decision would affect the commonality analysis in this case, we will *sua sponte* modify the class definition to reflect our ultimate merit determination. *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."); *see also Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (upholding the district court's modifications of the proposed class because "district courts have broad discretion to modify class definitions" and observing that "the district court's multiple amendments merely showed that the court took seriously its obligation to make appropriate adjustments to the class definition as the litigation progressed"); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) (acknowledging that "[l]itigants and judges regularly modify class definitions").

Our concurrent resolution of the petitioners' request for class certification and the merits of their underlying petition counsels in favor of modification, particularly given our conclusion in part V.A.2 below that delays associated with a portion of pre-certification review are unreasonable. *See Wal-Mart*, 564 U.S. at 351 (noting that a court's "rigorous analysis" of the Rule 23(a) requirements frequently entails "some overlap with the merits of the plaintiff's underlying claim" because "'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action'" (quoting *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982))). Accordingly, we narrow the class to include only those claimants who have been standing in line waiting more than 18 months since filing their Substantive Appeals.[3]

As the Secretary conceded at oral argument, such a modified class satisfies the Rule 23(a)(2) commonality requirement. Oral Argument at 58:00-:40. But even without that concession, we would hold that the modified class presents common questions of law or fact sufficient to establish commonality under any standard.

---

[3] We do not fault petitioners for zealously advocating for what they perceived to be the broadest viable class. It makes little sense to mandate, as our dissenting colleague suggests, that petitioners request a narrower class before knowing how the Court would rule on the original class they requested.

## B. Numerosity, Typicality, and Adequacy of Representation

The modified class also satisfies each of the remaining Rule 23(a) requirements. The Secretary initially conceded in his response to the petition that the proposed class was sufficiently numerous to satisfy Rule 23(a)(1), Secretary's Amended Resp. at 4, and he confirmed at oral argument that the modified class would likewise meet that requirement, Oral Argument at 1:01:38-:57.

The Secretary also conceded at oral argument that the modified class met the typicality requirement, as there were no longer any unique defenses among class members that would prevent aggregate resolution of the petition. *Id.* at 1:00:24-:44; *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." (internal quotations omitted)); *Robidoux*, 987 F.2d at 936-38 (explaining that the "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability," despite "minor variations in the fact patterns underlying individual claims," and finding that "the typicality requirement plainly was met with respect to persons suffering delays with respect to the applications for benefits" under two state assistance programs because the alleged delay "stems from the same cause").

And, the Secretary conceded that petitioners Godsey and Whitfield would be adequate representatives of the class because they did not have any interests adverse to the putative members of the modified class. Oral Argument at 1:01:38-:57; *see Amchem*, 521 U.S. at 625-26 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. '[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" (quoting *East Tex. Motor Freight System, Inc., v. Rodriguez*, 431 U.S. 395, 403 (1977))). With these concessions, the modified class meets the Rule 23(a) requirements for class certification.

## C. Rule 23(b)(2)

In addition to the Rule 23(a) requirements, a party seeking class certification must also demonstrate that the proposed class is maintainable under Rule 23(b). *See Wal-Mart*, 564 U.S. at 345. The petitioners have sought to certify a class under Rule 23(b)(2), which "permits a court to certify a case for class-action treatment if 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Monk*, 30 Vet.App. at 181 (quoting FED. R. CIV. P. 23(b)(2)). As the Supreme Court explained in *Wal-Mart*, "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" 564 U.S. at 360 (quoting Nagareda, 84 N.Y.U. L. REV. at 132)). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class

member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.* at 360-61.

The relief that the petitioners request in this case—a single injunction requiring the Secretary to certify and transfer all class members' cases to the Board within a time certain, *see* Pet. at 2—"perforce affect[s] the entire class at once" and is, therefore, precisely the type of relief contemplated by Rule 23(b)(2). *Wal-Mart*, 564 U.S. at 361-62. Accordingly, the Court concludes that the petitioners have met their burden of demonstrating that class certification is appropriate in this case.[4] *See Amchem*, 521 U.S. at 613-14; *Monk*, 30 Vet.App. at 174. Before certifying the class, however, the Court must address whether the petitioners' counsel will adequately represent the class.

### D. Adequacy of Class Counsel Under Rule 23(g)

"Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g)(1). "When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." FED. R. CIV. P. 23(g)(2). "The court may not appoint class counsel by default." ADVISORY COMMITTEE'S NOTES to FED. R. CIV. P. 23.

Rule 23(g)(1) provides, in relevant part, that, in appointing class counsel, the court:

(A) must consider:
  (i) the work counsel has done in identifying or investigating potential claims in the action;
  (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
  (iii) counsel's knowledge of the applicable law; and
  (iv) the resources that counsel will commit to representing the class; [and]
(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

FED. R. CIV. P. 23(g)(1)(A)-(B). Rule 23(g)(4) mandates that "[c]lass counsel must fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(4).

The Court is satisfied that petitioners' counsel will adequately represent the class. Counsel has heretofore zealously represented the petitioners by diligently and competently identifying,

---

[4] We do not share our dissenting colleague's view that the Court should categorically decline to certify classes because class or aggregate actions may be more difficult to manage than cases involving individual petitions. *Post* at 19. Manageability is generally not a concern in Rule 23(b)(2) class actions. *See Rodriguez v. Hayes,* 591 F.3d 1105, 1125 (9th Cir. 2010). Even in actions brought under Rule 23(b)(3) where manageability is a mandatory consideration, potential difficulty managing a class action "will rarely, if ever, be in itself sufficient to prevent certification of a class." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1272 (11th Cir. 2004). In any event, we see no reason to deny class certification in this case on manageability grounds—this case is highly manageable, particularly compared to the massive multistate litigations routinely certified as class actions by district courts. *See, e.g.*, *In re Qualcomm Antitrust Litigation*, 328 F.R.D. 280, 294 (N.D. Cal. Sept. 27, 2018) (certifying a nationwide class with between 232.8 and 250 million potential members).

investigating, presenting, and defending claims for relief, including in various pleadings and at oral argument. Counsel has submitted affidavits reflecting considerable experience in handling class action cases and other complex litigation, as well as veterans law cases in general. *See* Pet. at Exs. L-M. Those affidavits also reflect that counsel is able and willing to commit whatever resources are necessary to adequately represent the class in this petition, and counsel's actions thus far confirm those assertions. *Id*. Given the foregoing, the Court concludes that the petitioners' counsel is adequate to represent the class and will appoint said counsel as counsel for the class.

## E. Other Matters

Two final notes are necessary before we certify the modified class. First, although Rule 23(b)(2) does not require that the party seeking class certification demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" like Rule 23(b)(3) does, we nevertheless address that issue and conclude that in this case a class action decision is superior to a precedential decision as to a single petitioner. As the Federal Circuit made clear in *Ebanks*, petitions alleging systemic delay are "best addressed in the class-action context, where the court could consider class-wide relief" that would inure to all similarly situated claimants. 877 F.3d at 1039-40 (questioning "the appropriateness of granting individual relief to veterans who claim unreasonable delays in VA's first-come-first-served queue" because "[g]ranting a mandamus petition [for an individual] may result in no more than line-jumping without resolving the underlying problem of overall delay"). Moreover, deciding this petition as a class empowers the Court to monitor and enforce its order more easily and efficiently than would be possible through the filing of individual petitions seeking compliance in each claimant's case. *See Monk*, 855 F.3d at 1321 (emphasizing that class actions "could be used to compel correction of systemic error and to ensure that like veterans are treated alike"). In short, a class action decision is a more efficient and effective vehicle for resolving this case than a precedential decision focused on an individual veteran's case.

Second, given our concurrent resolution of the class certification request and the merits of the underlying petition, there is no need to provide notice of certification to the affected class members in this case. This conclusion, however, is based on the unique circumstances of this case and should not be construed as a holding that class certification notice is not necessary in future cases. Whatever the Court ultimately decides about the necessity of notice in future class actions before our Court, we are satisfied that notice of class certification is not necessary here. *See* ADVISORY COMMITTEE'S NOTES TO FED. R. CIV. P. 23 (emphasizing that courts have discretion to decide whether to direct notice of certification of a Rule 23(b)(2) class).

## F. Certification of the Modified Class

For the reasons outlined above, the Court modifies the class proposed by the petitioners and, pursuant to Rule 23(c)(1), certifies the following modified class for purposes of this petition:

> All VA benefits claimants who filed a Substantive Appeal at least 18 months prior to the date of this order and who are waiting for VA to initiate pre-certification review of their cases.

Having decided the request for class certification, the Court now proceeds to the merits of the class members' petition.[5]

## V.  MERITS OF THE CLASS PETITION

This Court has authority to issue extraordinary writs in aid of its jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a).  *See Cox v. West*, 149 F.3d 1360, 1363-64 (Fed. Cir. 1998); *Kelley v. Shinseki*, 26 Vet.App. 183, 185 (2013).  However, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."  *Kerr v. U.S. Dist. Court for N. Dist. of Cal.,* 426 U.S. 394, 402 (1976).  Three conditions must be met before the Court can issue a writ: (1) The petitioner must demonstrate the lack of adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute for an appeal; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that issuance of the writ is warranted.  *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004); *Kelley*, 26 Vet.App. at 186-92.

The petitioners have argued that a writ of mandamus is necessary to compel the Secretary to expedite the process of certifying and transferring cases to the Board after the filing of a Substantive Appeal.  Pet. at 1-2.  The petitioners have asserted that they, and all similarly situated members of the class, have no adequate alternative means to obtain relief from the Secretary's substantial certification delays because there is "no established procedures through which claimants can force the Secretary to certify their appeals," and the Secretary, in any event, routinely fails to respond to individual requests for certification.  *Id*. at 14.  The petitioners contend that the class has a clear and indisputable right to a writ of mandamus because the Secretary's failure to timely certify cases to the Board deprives class members of their Fifth Amendment right to due process of law, constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of 38 U.S.C. § 7261(a)(2) and 5 U.S.C. § 555(b), and prevents them from having their cases "considered and decided [by the Board] in regular order according to its place upon the docket" in violation of 38 U.S.C. § 7107(a)(1).  *Id*. at 1-2, 7-13.  Although the Secretary conceded that the petitioners have no adequate alternative means to obtain their requested relief, Secretary's Amended Resp. at 31-32, he asserted that the petitioners failed to carry their burden of demonstrating entitlement to a writ under any of their theories of the case, *id*. at 16-35.

Because "a claim that a plaintiff has been denied due process because of delayed agency action is essentially no different than an unreasonable delay claim," and because "if there is any difference at all, it is that an unreasonable delay claim would likely be triggered prior to a delay becoming so prolonged that it qualifies as a constitutional deprivation of property," *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 660 (D.C. Cir. 2010), we begin our analysis with the petitioners' argument that the time that it takes the Secretary to timely certify and transfer cases to the Board is unreasonable.  *See also Martin*, 891 F.3d at 1348-49 ("If the Veterans Court . . . , finds a delay unreasonable (or not unreasonable), it need not separately analyze the due process claim based on that same delay.").

---

[5] In certifying the modified class, the Court is not expressing an opinion as to whether those excluded from the class have been subject to unconstitutional or unreasonable delay in the appeal certification process.

A. Unreasonable Delay

1. Martin v. O'Rourke

Congress empowered this Court to "compel action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2); *see Monk*, 855 F.3d at 1319. In *Martin*, the Federal Circuit stated that the Court may use its mandamus authority to compel such Secretarial action, 891 F.3d at 1343-44, holding that the factors outlined in *TRAC* provide an appropriate framework for analyzing claims of unreasonable agency delay, *id*. at 1338. Those factors include:

> (1) The time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*TRAC*, 750 F.2d at 80 (citations omitted).

*Martin* was a consolidated case involving nine petitions for writs of mandamus that alleged that the time that VA takes to decide appeals after the filing of an NOD is unreasonable. 891 F.3d at 1342. Although the Federal Circuit did not reach the merits of the petitions, it provided extensive guidance to the Court on how to analyze each of the *TRAC* factors when deciding petitions based on unreasonable agency delay.

The Federal Circuit began by explaining that the first *TRAC* factor—whether VA's decisionmaking process is governed by a rule of reason—"is considered to be the most important factor in some circuits." *Martin*, 891 F.3d at 1345. To analyze this factor, along with the "relate[d]" second factor, the absence of a specific congressional timetable for action, the Court must look to the particular agency action delayed because it "is reasonable that more complex and substantive agency actions take longer than purely ministerial ones." *Id*. at 1345-46. The Court "may also consider whether the delays complained of are based on complete inaction by the VA, or whether the delays are due in part to the VA's statutory duty to assist a claimant in developing his or her case." *Id*. at 1346. In noting this consideration, the Federal Circuit specifically directed the Court to "consider whether delays are due to the agency's failure to perform certain ministerial tasks such as filling out the form certifying the appeal to the [Board] and docketing by the [Board]." *Id*. The Federal Circuit opined, in a footnote, that they could conceive of "no reasonable explanation for the historic delays that have occurred during appeal certification . . . and during transfer to the [Board]," ultimately calling those delays "inexplicable." *Id*. at 1346 n.9. Nevertheless, the Federal Circuit indicated that, due to the highly factual nature of the rule-of-reason inquiry, there was "no reason to articulate a hard and fast rule with respect to the point in

time at which a delay becomes unreasonable," reserving that case-specific determination for this Court. *Id*. at 1346.

Regarding the other *TRAC* factors, the Federal Circuit observed that the third factor would likely always weigh in a VA benefits claimant's favor because "[v]eterans' disability claims always involve human health and welfare." *Id*. Considerations relevant to the fourth factor—the effect of expediting delayed action on agency activities of a higher or competing priority—include VA's limited resources, the fact that the agency is in a better position than the courts to evaluate how to use those resources, and the effect of expediting action on other claimants, including any undesirable line-jumping. *Id*. at 1347. The Federal Circuit further explained that the fifth *TRAC* factor— the nature and extent of the interests prejudiced by delay—"incorporates an analysis of the effect of a delay on a particular veteran," meaning that the factor may weigh more heavily in favor of unreasonableness when "a particular veteran is wholly dependent on the requested disability benefits," as opposed to a veteran who "has a sustainable source of income outside of the VA benefits system." *Id*. And the Federal Circuit declared that the final *TRAC* factor may weigh in favor of issuing a writ "even where there is no evidence of bad faith" on the part of VA. *Id*. at 1348. With these principles in mind, we turn to the petitioners' allegations in this case.

### 2. *Application to the Instant Class Petition*

The petitioners have argued that the time that it takes the Secretary to certify and transfer cases to the Board after the filing of a Substantive Appeal is so egregious under *TRAC* and *Martin* as to warrant issuance of a writ. *See* Pet. at 10-13; Petitioners' Reply at 9-13. Although the class certified by the Court narrowed the relevant period to the time it takes for the Secretary to initiate pre-certification review, *see supra* pts. III.A, E, the petitioners' initial arguments remain relevant to the Court's reasonableness inquiry. Specifically, the petitioners asserted that there is no rule of reason that would support a multi-year adjudication delay following the filing of a Substantive Appeal; the Secretary's failure to timely act on Substantive Appeals conflicts with VA's statutory mandate to decide appeals in docket order; that delay harms the health and human welfare of veterans and their dependents, who are a protected class of individuals; and there is no higher or competing agency priority that justifies such delay. Pet. at 11-13. The petitioners further argued that nothing in VAIMA would remedy the current delays in processing legacy appeals and that the Court, therefore, should not factor the modernized appeal system into its *TRAC* and *Martin* analysis. Petitioners' Reply at 14-15.

The Secretary initially argued that, although the third and fifth *TRAC* factors weighed in the petitioners' favor, the remaining *TRAC* factors counseled against finding unreasonableness in this case. *See* Secretary's Amended Resp. at 24-31. However, when the Court asked him at oral argument which *TRAC* factors would be in VA's favor if the relevant period was narrowed to just the time that claimants waited for pre-certification review, the Secretary conceded that all the *TRAC* factors except factors two and four would weigh in the petitioners' favor. Oral Argument at 1:10:48-:12:00.

We agree with the petitioners that the current time that it takes the Secretary to initiate pre-certification review after the filing of a Substantive Appeal is per se unreasonable under *TRAC* and *Martin*. Although the Court is cognizant of the number of Substantive Appeals filed each year and

the myriad other tasks that the ROs perform, there is simply no rule of reason that can justify a multiyear wait before an RO even looks at an appealed case to determine whether further development and/or adjudication is warranted before certifying and transferring a case to the Board. Such delays are particularly intolerable because they consist of nothing but waiting in line: no development, no adjudication, no action whatsoever on the part of VA. *See Martin*, 891 F.3d at 1346 (explaining that the "rule of reason" analysis may take into account whether a delay is "based on complete inaction," as opposed to compliance with statutory duties). The first and "most important" *TRAC* factor, *id*. at 1345, therefore weighs heavily in the petitioners' favor.

The third, fourth, and fifth *TRAC* factors also support a finding of unreasonableness. As the Federal Circuit noted about the third *TRAC* factor in *Martin*, 891 F.3d at 1346, and the Secretary conceded in this case, Secretary's Amended Resp. at 29, the adjudication of veterans benefits claims inherently involves health and human welfare, making the alleged delay in conducting pre-certification review "less tolerable," *TRAC*, 750 F.2d at 80. *See Erspamer v. Derwinski*, 1 Vet.App. 3, 10 (1990) ("Claims for benefits due to military service clearly implicate human health and welfare concerns as distinguished from economic regulation.").

Regarding the fourth *TRAC* factor, even though the Secretary contended at oral argument that expediting pre-certification review would have an adverse impact on agency activities of a higher or competing priority, Oral Argument at 1:11:14-12:00, he admitted at several points during the argument that VAIMA gives primacy to processing legacy appeals and that he has recently targeted for expedited processing precisely the types of cases involved in this class action, *id*. at 35:07-36:03, 45:48-46:35, 1:10:34-:44. By allocating additional resources to legacy appeals processing to try to reach his goal of having no legacy appeals pending at ROs by June 2020, *id*. at 35:27-:35, the Secretary has already unequivocally indicated that the class members' cases are of the utmost priority. And any concern that granting the instant petition would require the Secretary to allocate additional resources away from other RO activities is mitigated by the fact that the classwide relief requested in this petition would inure to the claimants who had already waited the longest for pre-certification review, without the undesirable consequence of line-jumping associated with individual petitions alleging delay. *See Ebanks*, 877 F.3d at 1040 (advocating for aggregate resolution of systemic delay claims to avoid line-jumping); *Monk*, 855 F.3d at 1321 (emphasizing that class actions "could be used to compel correction of systemic error and to ensure that like veterans are treated alike"). In short, the fourth *TRAC* factor does not support the Secretary's position.

As for the fifth *TRAC* factor, although the aggregate nature of this case prevents the Court from looking at the individual circumstances of each class member's case to assess the nature and extent of the interests prejudiced by the delay, *see Martin*, 891 F.3d at 1347 (noting that the "fifth factor incorporates an analysis of the effect of a delay on a particular veteran"), we believe it is sufficient to observe, as the Federal Circuit did in *Martin*, that many VA beneficiaries—likely many of the class members in this case—"depend on [VA] disability benefits for basic necessities, such as food, clothing, housing, and medical care." *Id.* Moreover, as this Court recognized in *Erspamer*, the interests prejudiced by *systemic* delay may "transcend" those of a single petitioner because "'excessive delay saps the public confidence in an agency's ability to discharge its responsibilities and creates uncertainty for the parties, who must incorporate the potential effect of possible agency decisionmaking into future plans.'" 1 Vet.App. at 10 (quoting *Potomac Electric*

16

*Power Company v. ICC*, 702 F.2d 1026, 1034 (D.C. Cir. 1983)). Indeed, the Secretary conceded at oral argument that the fifth *TRAC* factor weighed in favor of the petitioners and the class in this case. Oral Argument at 1:10:45-:46.

The remaining *TRAC* factors do not tip the scales towards a finding of reasonableness. Specifically, the sixth *TRAC* factor does not appear to weigh substantially in either party's favor: The pleadings do not reflect and the petitioners do not allege bad faith on the part of the Secretary in taking so long to conduct pre-certification review, but "[a] writ may be appropriate under the *TRAC* analysis even where there is no evidence of bad faith." *Martin*, 891 F.3d at 1348 (explaining that "the Veterans Court need not find 'any impropriety lurking behind agency lassitude' to hold that agency action is unreasonably delayed" (quoting *TRAC*, 750 F.2d at 80)). The lack of bad faith by the Secretary is, at most, de minimis support for his position.

And, although the second *TRAC* factor weighs in the Secretary's favor because Congress has previously declined to impose an appeal certification timeline on VA, *see, e.g.*, American Heroes COLA Act of 2015, H.R. 677, 114th Cong. § 13 (proposing a one-year certification deadline after the filing of a Substantive Appeal); VA Appeals Backlog Relief Act of 2015, H.R. 1302, 114th Cong. § 2 (same); VA Appeals Backlog Relief Act of 2015, H.R. 5349, 113th Cong. § 2 (same); Veterans' Claims Administrative Equity Act of 1991, H.R. 141, 102d Cong. § 2 (proposing a grant of interim benefits when VA did not certify a denied claim to the Board within 180 days of the filing of a Substantive Appeal), that fact is not sufficient to overcome the aforementioned factors that emphatically demonstrate that the time the class members have waited for pre-certification review is unreasonable. *See In re A Cmty. Voice*, 878 F.3d 779, 787 (9th Cir. 2017) ("Even assuming that EPA has numerous competing priorities under the fourth factor and has acted in good faith under the sixth factor, the clear balance of the *TRAC* factors favors issuance of the writ.").

Thus, the petitioners have demonstrated a clear and indisputable right to a writ of mandamus. *See Freeman v. Shinseki*, 24 Vet.App. 404, 417 (2011). Unlike our dissenting colleague, *see post* at 21, we are not content to wait for the Secretary to remedy these unreasonable delays on his own. The Secretary has had many years to act and initiate pre-certification review of class members' cases, and he has failed to do so. Ms. Whitfield, for example, was forced to wait over six years for the Secretary to act on her Substantive Appeal based on no fault of her own. Simply put: the time has come for judicial intervention.

Given the foregoing, and given the Secretary's earlier concession that the petitioners have no adequate alternative means to obtain the relief they seek, Secretary's Amended Resp. at 31-32, the Court is convinced that issuance of a writ is warranted in this case to ensure that the class members receive timely pre-certification review of their appealed cases so that any necessary further development may occur or certification may proceed. *See Cheney*, 542 U.S. at 380-81; *Kelley*, 26 Vet.App. at 186-92.

## B. Remedy

Having determined that the delays experienced by the class awaiting pre-certification review are unreasonable, the Court must now determine what relief is appropriate to remedy that

classwide harm. Although the petitioners initially asked the Court to order the Secretary to certify all class members' cases to the Board within 60 days of granting their petition, Pet. at 2, that prayer for relief is somewhat inconsistent with the modified class that the Court ultimately certified. *See supra* pt. IV.F. The Court will order the Secretary to conduct pre-certification review of all cases that fit within the class definition, and for each class member, within 120 days after the date of this order, either (1) certify his or her case, or (2) affirmatively initiate any development or adjudication activities necessary for certification or resolution at the RO. We believe that this remedy properly balances the class members' interest in having their Substantive Appeals expeditiously processed with VA's statutory duty to assist the class members in substantiating their appealed claims.

We recognize that the Secretary will likely have to reorganize his adjudication priorities and allocate additional resources to the ROs to comply with this Court order. Ordinarily, the Court affords the Secretary great deference in how he chooses to run the day-to-day operations of the agency. But extraordinary circumstances call for extraordinary measures, and the Secretary's longstanding failure to remedy the unreasonable delays in accomplishing pre-certification review, resulting in claimants waiting in line for years with no action being taken by VA, has compelled the Court's intervention in this case. *See United States v. Black*, 128 U.S. 40, 48 (1888) (explaining that a court should "not interfere by *mandamus* with the executive officers of the government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose," but holding that, "when [executive officers of the government] refuse to act in a case at all, . . . a *mandamus* may be issued to compel them").

### C. The Petitioners' Other Arguments

Given this disposition, the Court need not address the petitioners' argument that the class was denied due process of law under the Fifth Amendment by being subjected to the aforementioned delays while awaiting pre-certification review. *See Martin*, 891 F.3d at 1349-50. Nor are we required to address the petitioners' alternative statutory argument that such delays violated section 7107(a)(1) because that argument could not result in a greater remedy for the class. *See Mahl v. Principi*, 15 Vet.App. 37, 38 (2001).

### VI. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the class proposed by the petitioners is modified consistent with this decision. It is further

ORDERED that, pursuant to Rule 23(c)(1), the following class is certified for purposes of this petition: All VA benefits claimants who filed a Substantive Appeal at least 18 months or more prior to the date of this order and who are waiting for VA to initiate pre-certification review of their cases. It is further

ORDERED that, pursuant to Rule 23(g), petitioners' counsel is appointed as class counsel. It is further

ORDERED that the petition is granted in part. The Secretary shall conduct pre-certification review of all cases that fit within the class definition, and for each class member, within 120 days after the date of this order, either (1) certify his or her case, or (2) affirmatively initiate development or adjudication activities necessary for certification or resolution at the RO. It is further

ORDERED that, within 60 days of the date of this order, the Secretary file with the Court a status update, which includes (1) the names and VA claims numbers for all members of the class; (2) the number of cases in the class that are still awaiting pre-certification review; (3) the number of cases in the class that have been processed in compliance with this order—i.e., certified or afforded additional development and/or adjudication by the RO following pre-certification review; and (3) any other information the Secretary deems relevant to his compliance with the Court order. The Court may subsequently order further status updates as necessary. *See* FED. R. CIV. P. 23(d).

DATED: June 13, 2019                                                    PER CURIAM.

PIETSCH, *Judge*, *dissenting*: I respectfully dissent from the majority's opinion pertaining to both class certification and granting the petition on the merits.

Although the Federal Circuit held that this Court has the authority to certify a class or otherwise aggregate claims, I still question whether we should exercise that authority. *Monk*, 855 F.3d at 1320-21. In refusing to entertain class actions, the Court previously noted that a class action would be "highly unmanageable" and, in the context of appeals, unnecessary given the binding effect of the Court's precedential decisions. *See Harrison v. Derwinski*, 1 Vet.App. 438, 438-39 (1991) (en banc order). I remain convinced that certifying and managing a class at an appellate Court will be troublesome. I am particularly concerned about trying to manage a class action where the Court has still not adopted any rules to govern how a class, once certified, will proceed or be administered at the Court. Although the Court has stated we will use Rule 23 as a guide for deciding requests for class certification, the Court has not determined how a class will be overseen. Without some procedures in place, I am deeply concerned with the majority's decision to certify a class.

As to the commonality of the class being certified, the majority noted that in *Monk*, a plurality of this Court held that the proposed class in that case lacked commonality where there was not a "common question for the petitioners' and putative class members' cause of the delay." 30 Vet.App. at 181. The majority here simply modifies the class to avoid the commonality problems that derailed class certification in *Monk*. In doing so, the majority focuses on the outcome of the case, modifying the class so it will be successful on the merits. Indeed, the majority states the concurrent resolution of the request for class certification and the underlying merits of the petition favors modification. While I agree with the majority that a class certification analysis under Rule 23(a) involves overlap with the merits, I do not agree with the notion that the class should be modified so that it will be successful on the merits. I see no reason why the class certification analysis under Rule 23(a) should be different simply because the Court is also deciding the merits of the petition. It seems to me that the majority has unnecessarily created a "chicken or egg" situation; in other words, it is difficult to tell whether the class certification

decision or the merits determination comes first. Absent a request for modification of the class by the petitioners, in my view, it appears the majority made a determination on the merits and certified a class based on that determination. I note that, at oral argument, petitioners were strongly against modification. When faced with several opportunities to modify the class, petitioners' counsel refused. Oral Argument at 5:30, 14:34. Although counsel ultimately acquiesced when asked whether petitioners would rather lose their case than modify the class, on rebuttal, counsel again argued against modification. *Compare id.* at 15:30 to 20:36 *with* 1:14:56.

The proposed class in this case suffers many of the same commonality flaws that were present in *Monk*. 30 Vet.App. at 178-79. As described by the majority, the process of certifying an appeal to the Board is not as simple as filing out a form. Many times, including in the cases of some of the named petitioners, additional development must be completed before an appeal may be certified to the Board. The myriad of reasons for the delays involved in cases pending more than two years from the time of filing a Substantive Appeal to the case being certified to the Board counsels against commonality. *See Monk*, 30 Vet.App. at 178 (finding it is impossible to determine whether VA's delay in adjudicating claims is reasonable without knowing the reason for the delay). By modifying the class, the majority seems to skip the commonality analysis, instead modifying the class so that commonality exists. In doing so, the majority conducts almost no analysis, noting the Secretary's concession that a modified class would meet the commonality requirement and stating that, even without that concession, the majority would find commonality, but not explaining why.

As to the merits of the petition, I agree with most of the majority's analysis concerning the reasonableness of the time the Secretary takes to begin the pre-certification review after a claimant has filed a Substantive Appeal. The delay involved in the cases of the modified class members for VA to even pick up a claimant's file to begin pre-certification review is inexcusable. Where I differ from the majority is with respect to *TRAC* factors two and four. *See TRAC*, 750 F.2d at 80. Those factors consider where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute and the effect of expediting delayed action on agency activities of a competing priority.

As the majority states, Congress has chosen not to impose a timeline on VA for certifying appeals to the Board. My disagreement with the majority is only as to how much weight this factor deserves. As to the fourth *TRAC* factor, the Secretary has recognized the delays associated with legacy appeals and is taking action to resolve these delays. To me, this factor, along with the second *TRAC* factor, are the deciding factors in this case.

At oral argument, the Secretary detailed the steps VA has taken to work legacy appeals, noting that the oldest cases are being worked on first. The Secretary has recognized that these cases have been allowed to linger for far too long and has put in place a plan to address them. At this point, it seems to be nothing more than an empty gesture for the Court to insert itself into the Secretary's process in dealing with these appeals. Because VA is addressing this problem, I do not see any reason to inject ourselves into the process without some indication that the Secretary's current plan has failed. Here, not only is the majority ordering the Secretary to act on these cases within a much shorter time frame than VA had planned and budgeted, the Court is simultaneously

certifying the Court's first class action as part of its decision. I fear there will be some confusion and delay as both the Court and the Secretary deal with a class action.

Because VA is aware of the delay associated with these legacy appeals and is actively working on them, I would allow the Secretary to complete what he has started. If, at some point in the future, it becomes clear that the Secretary's plan for working on these appeals is insufficient, then I would consider getting involved. Until that time, I would let the Secretary run his agency.